**People of the State of Illinois, Plaintiff-Appellee, v. Percy Robinson and Theron Burnett, Defendants-Appellants.**

Gen. Nos. 52,397, 52,398.

First District, Fourth Division.

April 2, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendants were convicted of attempt burglary in a bench trial and sentenced to the penitentiary for not less than one nor more than three years. In this consolidated appeal they contend (1) that the prosecutor obstructed the accused in the preparation of their defenses by misrepresenting the State's evidence prior to trial and (2) that the sentence should be reduced.

EVIDENCE

Testimony of Mrs. Ida Mae Hike, for the State:

On August 24, 1966, about 1:20 p. m., she was looking out of her back window on the first floor at 7100 South Eggleston, Chicago. From that vantage point she was able to see the building located at 451 West 71st Street. The first-floor resident of that building was Mr. Willie Brown, whom the witness had known for nine years. She observed the two defendants attempting to boost a third man up to open Mr. Brown's window. Knowing that none of the three lived in the apartment, she continued to watch their unsuccessful attempt to open the window. All three men had coats over their arms. After failing to open the window, the two defendants crossed the street and sat down on some steps across from Mr. Brown's building. Meanwhile the third man had entered Mr. Brown's building where his mailbox was located. Subsequently the third man returned to the outside, signaled to the two defendants, and all three men then reentered the building. At this point the witness called the police, and Officer Kinnally responded within two or three minutes. Just as he arrived the three men were emerging from the doorway to Mr. Brown's building. The two defendants were apprehended but the third man went into the alley and was not caught.

Testimony of Officer Frank Kinnally, for the State:

He has been a police officer for 15 years. He arrested the two defendants as they were leaving the building but he did not observe a third man. Later he had occasion to examine the exterior of Mr. Brown's apartment. He found marks on the front door and the bottom sash had been removed from the rear window.

Testimony of Willie Brown, for the State:

He is the tenant of the apartment in question. On August 24, 1966, he left his apartment for work about 7:30 a. m. and returned about 6:00 p. m. Because his home had been broken into several times before he checked the windows and door locks every day before leaving for work. Everything was in order before he left but upon returning that evening he discovered marks on his front and back doors near the lock, apparently made by a screwdriver or pliers. In addition, the screen had been taken off the back window on the back porch and the sash had been pulled away from the bottom of the window.

Testimony of Percy Robinson, one of the defendants:

On August 24, 1966, he lived at 6748 South Laflin. About 1:00 p. m. on that date he and his codefendant were on their way from his home to Mr. Burnett's home at 6748 Wentworth. The two homes were almost exactly ten blocks due east of each other. About four blocks from Mr. Burnett's home, that is, at 71st and Normal, the two defendants stopped outside Mr. Brown's building and began to lounge around on the steps and propped up against the building. About ten minutes later a third man whom they did not know came out of Mr. Brown's building and asked the two defendants if they would mind helping him open a window on the first floor. They boosted him up but the man was not able to open the window. The man then went around the back to see if he could get in the apartment that way, and the two defendants

crossed the street to continue their discussion. Shortly thereafter the man emerged from the front of the building, told the two defendants that he had obtained entry into the apartment and went around to the back of the apartment again. Neither defendant actually entered the building. The defendant testified that he told the police about the third man and how he and his codefendant had come to help him. He repeated to the police at the station his explanation of how he and his codefendant had become involved with the third man.

The testimony of defendant Theron Burnett was substantially the same as that of his codefendant.

Rebuttal by State:

Officer Kinnally testified that when he arrested the defendants they told him, "Well, we didn't do nothing, we were just coming from the park and we were going home."

Anthony Ploszaj, a Chicago police officer for 23 years, testified that when interrogated by him neither defendant ever told him that they had been trying to assist a third party in attempting to open a window at 451 West 71st Street.

OPINION

Defendants' sole contention for seeking a reversal and remandment for new trial is based on the introduction by the State in rebuttal of defendants' oral statement in spite of the prosecutor's representation prior to trial that the State had no oral or written statements of the defendants. The oral statement of defendant Robinson (hereinafter referred to as "the statement") as testified to by Officer Kinnally was:

Well, we didn't do nothing, we were just coming from the park and we were going home.

Defendants claim that the State's failure to apprise them of the exculpatory statement hindered them in the prepa-

ration of their defense. They cite Gregory v. United States, 369 F2d 185, which states:

> The current tendency in the criminal law is in the direction of discovery of the facts before trial and elimination of surprise at trial. A related development in the criminal law is the requirement that the prosecution not frustrate the defense in the preparation of its case.

That opinion is founded upon Rule 16, Rules of Criminal Procedure for the United States District Courts, entitled "Discovery and Inspection." We have no such discovery procedures under Illinois law or rules and Gregory is inapplicable.

In People v. Lefler, 38 Ill2d 216, 220, 230 NE2d 827, the court held that the voluntary character of any out-of-court statement must first be established before the statement is used, even for impeachment purposes, and that an incriminating admission should not be admitted *over objection* without a preliminary hearing. However, the court also found that the distinction between confessions and admissions was preserved and that as pointed out in People v. Georgev, 38 Ill2d 165, 230 NE 2d 851, the furnishing of a list of witnesses to an oral statement as provided by Section 114–10 of the Code of Criminal Procedure (Ill Rev Stats 1965, c 38, § 114–10) applies only to confessions and not to admissions. The statement in the instant case is clearly not a confession.

Defendants next urge that if they had been informed of the statement they might have made a motion to suppress under Miranda v. Arizona, 384 US 436. They were not precluded from making a motion to suppress at the trial (People v. Strader, 38 Ill2d 93, 230 NE2d 569) and actually interposed no objection to the statement. Therefore defendants waived their rights and cannot for the first time raise the issue in the reviewing court. People v. Hubbard, 38 Ill2d 104, 230 NE 2d 220.

■ Defendants request a reduction of the sentence (one to three years) because the judge mentioned that defendants were on trial for four days when the trial commenced on a Monday, was continued to Thursday to bring in an additional witness and concluded on Thursday. However, the record discloses that after finding defendants guilty he ordered a probation investigation. On defendants' application for probation, their attorney stated that both defendants had served time in the County Jail for previous offenses. The trial judge stated:

> I cannot understand why young men this age would not be working or doing something rather than lounging around the streets so many blocks from their home and hanging around pool rooms. These are the things that are not for their well being.
>
> Both are high school dropouts. One of them not only dropped out, he got tossed out because he apparently didn't want to go to school or take direction from anybody.

We find no reason to reduce these sentences.

The judgments and sentences of the Circuit Court are affirmed.

Affirmed.

ENGLISH and McNAMARA, JJ., concur.