450

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES HEATH (Impleaded), Defendant-Appellant.

(No. 53726; ▮▮▮▮▮▮▮▮

First District—March 12, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Arthur Lewis Belkind, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was jointly indicted with one Ruth Jenkins for the offense of armed robbery. (Ill. Rev. Stat., 1967, ch. 38, par. 18—2.) After a bench trial defendant was found guilty and sentenced to two to three years. Miss Jenkins was also found guilty. Defendant Heath's sole contention on appeal is that he was not proven guilty beyond a reasonable doubt. *Testimony of James Davis,* complaining witness, for the State.

On May 12, 1968, at approximately 11:40 P.M., he was in the vicinity of 63rd and Stony Island when Ruth Jenkins walked up to him and asked for a date. She asked him if he had ten dollars and he told her he did. They walked to Miss Jenkins' apartment at 6322 Stony Island where he gave her the money.

Once inside Miss Jenkins' apartment she asked him to undress, which he did. She took off her slacks. It was dark in the bedroom but there was a light on in the kitchen. There is a doorway which leads from the kitchen to the bedroom.

After he was undressed the defendant walked into the bedroom and hollered, "What's going on here? What's this man doing in here?" Defendant then jumped over the bed and stuck a knife onto his stomach. The knife was all silver and was about six inches long. Miss Jenkins went through his pockets and took out $100 from the right rear pocket. The defendant then said, "I should kill you." But Davis said, "Come on, I didn't did [sic] nothing to her." The defendant then asked him for his gold watch which he took off and gave to the defendant.

He got dressed and was led out of the apartment. Defendant had the knife in his back as he was led out of the apartment. Once he was out of the apartment he went downstairs and called the police.

Miss Jenkins was wearing orange slacks and a maroon red sweatshirt. The defendant had on a blue jersey, slipover sweater and gray slacks.

After the defendant and Miss Jenkins were arrested early the next morning, he saw them again at the police station about 2:30 A.M. on May 13, 1968. Miss Jenkins had on the same clothes as earlier in the evening. The defendant was wearing a slipover sweater, gray slacks and a white shirt.

On cross-examination Davis testified that after the police arrived in response to his call he told them what happened. He called from the basement where the janitor lived. He did not see Miss Jenkins or the defendant leave the building before the police arrived. When the police came he went upstairs with one of the police officers but Miss Jenkins would not open the door. The policeman asked him if he had a knife and he gave the one he carried to the officer. The officer gave it back to him before the officer had a chance to use it because he heard noise on the back stairs. The officer sent him downstairs to another waiting policeman.

He reported to the police station at 2:30 A.M. on May 13, after the police rang his doorbell. He had gone home to bed.

The bedroom was dark but "it was not too dark, because the light was shining through from the kitchen."

He identified the defendant and Miss Jenkins as the two people who robbed him.

*Testimony of John Doyle,* for the State.

He is a police officer with the Chicago Police Department. Around 12:30 or 1:00 A.M. on May 13, 1968, he received a radio message of an armed robbery. A description of both of the assailants was given, "one female Negro wearing orange pants and a maroon sweater or sweatshirt and one male Negro, but I don't remember what was the description on him." In the vicinity of 63rd and Stony his partner noticed a male and female who fit the description of the assailants which had

been broadcast over the radio. The female Negro was wearing orange slacks and a maroon sweater. He observed the male companion with her.

The defendants were transported to the police station, later he went over to the apartment of James Davis and took him back to the station. No weapon was recovered.

He identified Miss Jenkins and the defendant as the persons he arrested on May 13, 1968.

*Testimony of Ruth Jenkins, in her own behalf.*

She lives at 6322 South Stony Island. On May 12, 1968, she was at 63rd and Stony Island. Her girl friend and she had just left the movie when a man approached. He said his name was LeRoy. They exchanged greetings. Her girl friend then left for home. She told the man, who now said his name was James, that she was going home and he insisted on going with her. She started for home and James followed her from behind. When she opened the door to her apartment, he reached over her shoulder and pushed the door open. An argument began between James and her.

About this time Charles (defendant) came to the door and asked what the trouble was. James and the defendant then started to tussle. James broke away and "runs on down the stairs and he call back he's going to get even with us, something like that."

She never saw the defendant or James Davis pull a knife. She never asked Mr. Davis to undress. She had on gold pants and a burgundy top sweater which could be considered maroon.

On cross-examination she testified that she never was in the apartment with Mr. Davis on May 12, 1968. She first saw James Davis at 10:30 P.M. or 11:00 P.M. As she walked to her apartment Mr. Davis walked behind her. She saw no weapon nor did she see a watch on Mr. Davis. Mr. Davis did not give her ten dollars on May 12. He had given her ten dollars on previous occasions.

The defendant did not testify.

*Opinion*

Defendant contends that he was not proven guilty beyond a reasonable doubt. He argues that where the evidence is conflicting on vital questions and where the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt the conviction must be reversed. Defendant claims that it is quite remarkable that a man who has been robbed and threatened with a knife should go home and go to bed, and do nothing further until 2:30 in the morning when he went to the police station. However, this was not James Davis' full and complete story. On cross-examination he testified that after he was led out the

door of Miss Jenkins' apartment by the defendant, who had a knife in his back, he went downstairs to the janitor's apartment and called the police. He then waited for the police to arrive and told them what happened. He further testified that he accompanied one of the police officers upstairs to Miss Jenkins' apartment and when nobody answered, the officer asked him if he had a knife to assist him. After the officer heard noise coming from the back stairs, the officer sent Mr. Davis downstairs to tell another waiting officer what had happened. Only after all this had occurred did Mr. Davis then go home to bed.

Defendant also argues that it is difficult to understand why Officer Doyle arrested Miss Jenkins and the defendant and transported them to the police station based on mere suspicion. We would point out, however, that Officer Doyle did testify that the radio message he received of the armed robbery gave a description of both suspects. At trial he could remember the radio description of Miss Jenkins but could not remember the description which was relayed of the defendant. Further, Officer Doyle also testified that his partner and he observed two suspects in the vicinity of 63rd and Stony Island who matched the radio broadcast description of the armed robbers. They pulled alongside of the suspects and thereafter transported them to police headquarters.

Finally, defendant claims that Miss Jenkins' testimony "seems true" as compared to that of Mr. Davis and Officer Doyle, particularly in view of the fact that neither the money nor the watch was recovered. There is no requirement in either logic or law that the proceeds of a robbery be found in possession of the robber some two and one-half hours after the crime.

■■ Although the evidence clearly shows that there was an encounter between defendant and the complaining witness, there are conflicting versions of what transpired. In a nonjury trial where the evidence is conflicting, it is the function of the trial court, as the trier of the facts, to determine the credibility of the witnesses and the weight to be accorded their testimony. The trial court's finding will be disturbed only where the evidence is so unsatisfactory as to create a reasonable doubt of defendant's guilt. (*People v. May*, 46 Ill.2d 120; *People v. Adorno*, 126 Ill.App.2d 98; and *People v. Branscomb*, 116 Ill.App.2d 385.) We find that the evidence was not so unsatisfactory as to cause a reasonable doubt of defendant's guilt.

The judgment is affirmed.

Judgment affirmed.

ENGLISH, P. J., and LORENZ, J., concur.