THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FLOYD WILSON, Defendant-Appellant.

First District (5th Division) No. 62008

Opinion filed March 12, 1976.

James R. Streicker and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Renee Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant Floyd Wilson was charged by indictment with the offense of armed robbery. After a bench trial, defendant was found guilty of robbery and sentenced to the penitentiary for a term of two to six years. Two issues are presented on appeal: (1) whether it was error for the trial court to deny a continuance and (2) whether the complaining witness' identification of defendant was sufficient to establish his guilt beyond a reasonable doubt.

The complaining witness, Earl Fisher, testified as follows: He owned a candy store and penny arcade at 408-410 West 65th Street and resided above the stores. On August 18, 1973, at about 10 p.m., he closed his store and drove his daughter home. He returned about 11:20 p.m. As he arrived, he saw two men standing near an alley across the street from the store. He had seen both men together several days earlier outside of his store. At trial he identified the defendant as one of the two men.

As Fisher was unlocking the gate to the store, he noticed that defen-

dant was crossing the street. Defendant came up to Fisher, put a gun to his head and said, "I have a contract to kill you." At first defendant ordered Fisher to open the door but then told him to get back into his car so that defendant could take him home "because we heard you have a lot of money." Before entering the car, defendant's companion searched Fisher and took a wallet containing approximately $90, a watch, a ring and an unregistered gun from him. Fisher sat in the driver's seat, defendant was next to him, and defendant's companion sat in the back seat. Defendant ordered Fisher to drive to his home, threatening that, "If you don't find no money, I'm going to kill your family."

Defendant's companion then suggested that they go into Fisher's store to take a television set located there. The three alighted from the car. Following the defendant's instructions, Fisher opened the door to his store, took the television set outside and placed it on the trunk of his car.

At this point three young men were seen walking towards them. Defendant put his gun down to his side in order to conceal the weapon. Taking advantage of this, Fisher ran across the street to the house of an acquaintance and shouted that he had been robbed. Defendant picked up the television set, dropped it, picked it up again and ran around the corner. Defendant's companion also ran.

The police arrived within several minutes. Fisher identified himself as the one who had been robbed, described the robbers as a tall boy and a short boy and stated that they had just run around the corner. The police immediately drove their car around the corner to a building half a block away. Fisher followed on foot. They saw defendant running towards them. A chase ensued, defendant finally running into a vacant building located across the alley from Fisher's store. The police went into the building and brought defendant out. Fisher identified him as one of the robbers.

Officer Earl Marshall of the Chicago Police testified that, in response to a call of a robbery in progress, he drove to 410 West 65th Street. Other police officers had already arrived and were positioned in the alley across from the candy store. Fisher went to Officer Marshall and spoke to him. Marshall, with other officers, entered the vacant building and began to search the basement of the building. He came upon the defendant who was sitting against a wall in the boiler room. Marshall placed defendant under arrest and took him outside.

On the day of trial the State indicated that it was ready to proceed. The defense made an oral motion for a continuance, stating that the transcript of the preliminary hearing was not available and that defendant was not psychologically prepared for trial. The court noted that defendant had made a speedy trial demand and that the case had been

set for trial without the transcript. As a result, the motion was denied. Defendant stated that he would like to have the trial that day. A recess was granted to allow time for defendant to confer with his counsel.

Following the recess defense counsel stated that he wished to clarify certain things. Counsel restated that the transcript of the preliminary hearing was not available and informed the court that he had not received the Bureau of Identification report of the complaining witness' conviction record. The trial judge stated that if the record were found to be necessary for impeachment, it would be obtained. Trial then commenced. Earl Fisher and Officer Marshall testified for the State. The defense did not present any witnesses. At no time did the defense request production of the conviction record during trial. After finding defendant guilty of robbery, the court ordered a presentence investigation and the production of Fisher's conviction record.

OPINION

Since defendant is not now questioning the propriety of the denial of a continuance based upon the unavailability of the preliminary hearing transcript, it will not be considered.

On appeal defendant contends that the trial court erred in failing to grant his request for a continuance for the purpose of obtaining the conviction record of the complaining witness. However, it was not until after the recess that defense counsel informed the court for the first time that he did not have the conviction record. A motion for a continuance was not made at this time, and trial then commenced.

■■ It is evident that defense counsel was calling the court's attention to the absence of the conviction record for the purpose of being allowed greater latitude for impeachment during cross-examination, and not for the purpose of obtaining a continuance. In fact, counsel did enjoy the opportunity to broadly question the complaining witness concerning his criminal record, the court making note of the fact that the conviction record was unavailable. Since a continuance was never requested at trial for the purpose of obtaining the conviction record, the issue will not be considered on review. (*People v. Armstead*, 28 Ill. 2d 252, 190 N.E. 2d 778; *People v. Benford*, 31 Ill. App. 3d 892, 335 N.E.2d 106.) Furthermore, we note that the trial court, after ordering its production, reviewed the conviction record during the sentencing hearing and found "no material in there that would affect the credibility of the witness."

Defendant also contends that his conviction should be reversed because it was based solely upon an identification by a witness whose testimony was vague and doubtful and whose credibility was questionable. It is well established in Illinois that the testimony of a single witness is

sufficient to convict, provided that the identification is positive and the witness is credible. *People v. Martin*, 47 Ill. 2d 331, 265 N.E.2d 685, *cert. denied*, 403 U.S. 921; *People v. Stringer*, 52 Ill. 2d 564, 289 N.E.2d 631.

Defendant attacks the credibility of Fisher's testimony on several points. It is claimed that the victim's description of his robbers was vague since he initially described them to police only as "a tall boy and a short boy." This description was given to police within minutes of the robbery. The police did not elicit any more details but rather went off in pursuit of the described suspects. In *People v. Catlett*, 48 Ill. 2d 56, 268 N.E.2d 378, our Supreme Court stated that precise accuracy in describing facial characteristics is unnecessary where an identification is positive. The failure of a witness to report certain characteristics is solely a question of the weight to be afforded the witness' identification. *People v. Arroyo*, 18 Ill. App. 3d 187, 309 N.E.2d 804.

The record reveals that Fisher made a positive identification of defendant after his apprehension. Whatever omissions are now claimed concerning the initial descriptions of the robbers were evidently due to the immediacy of the robbery and the desire to commence pursuit, and not because Fisher could not recall their features. The subsequent identification of defendant by Fisher, being positive, without hesitation, and within a short time of the occurrence of the offense, supports this conclusion.

Other claims of discrepancies in Fisher's testimony are not supported upon a careful examination of the record. The record does not contain inconsistencies or contradictions which would render the testimony unbelievable or leave a reasonable doubt of defendant's guilt. Particularly, defendant asserts that the chase scene recounted by Fisher on cross-examination was incredible.

Defendant contends that, since Officer Marshall did not testify that the police gave chase to defendant, it must be concluded that no chase in fact occurred. Defendant maintains that Marshall had to be present at the time that the chase took place. This is based upon the supposition that, since the evidence discloses that Fisher spoke to the police before the chase, and Officer Marshall testified that he spoke to Fisher, Fisher could only have spoken to Marshall. However, the record reveals that Marshall came upon the scene only after other police had arrived and were positioned by the vacant building. He merely joined other officers in searching the building for defendant. There is nothing in the record which supports a conclusion that Marshall must have partaken in the pursuit of defendant, if it occurred at all, or that Fisher spoke only to Marshall.

Defendant further claims that the trial court did not believe Fisher's

testimony since it found defendant guilty of robbery, despite the witness' claim that defendant had a gun. However, the trial court stated that it based its conclusion that there was a reasonable doubt as to whether defendant was armed with a dangerous weapon upon the fact that no shots were fired and the gun was not recovered. (See *People v. Binion*, 80 Ill. App. 2d 130, 225 N.E.2d 485.) Extensive cross-examination of Fisher by defense counsel disclosed that Fisher saw the supposed weapon only briefly. Thus, it was not unreasonable for the trial court to conclude that a reasonable doubt existed on this point and still find the identification of defendant to be positive and credible.

■■ In criminal cases where a jury is waived, the credibility of the witnesses and the weight to be accorded their testimony are matters to be determined by the trial judge. He had the superior opportunity to hear the testimony of the witnesses and to observe their demeanor on the stand. A reviewing court will not substitute its judgment for that of the trial court on questions involving the credibility of the witnesses or the weight of the evidence. (*Stringer; People v. Nicholls*, 44 Ill. 2d 533, 256 N.E.2d 818.) The judgment of the trial judge will not be disturbed on review unless the evidence is so unsatisfactory as to leave a reasonable doubt of guilt. (*People v. Hampton*, 44 Ill. 2d 41, 45, 253 N.E.2d 385.) Fisher's identification of defendant as the one who robbed him was positive, and his testimony was credible. The evidence does not warrant setting aside the verdict of the trial court.

For the reasons stated above the judgment of the trial court is affirmed.

Affirmed.

LORENZ, P. J., and BARRETT, J., concur.