THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM DE LEON *et al.*, Defendants-Appellants.

First District (5th Division)    No. 62343

Opinion filed July 9, 1976.

Diane C. Geraghty, of Northwestern Legal Assistance Clinic, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendants William De Leon and Gilberto Villegas were charged by indictment with the offense of armed robbery. After a bench trial, both were found guilty of robbery and sentenced to 180 days of periodic imprisonment as a condition of five years' probation. Three issues are presented on appeal: (1) whether it was error for the trial judge to deny defendants' motion to call as their witness a police officer not listed on their witness list; (2) whether defendants were proven guilty of robbery beyond a reasonable doubt; and (3) whether the trial court improperly considered defendants' silence as being indicative of guilt.

Samuel Clemons and his brother Herman testified to substantially similar acts: On the evening of November 18, 1973, they were at the corner of North Avenue and Leavitt Street with William Fletcher when defendants and another approached them. Defendant De Leon, who appeared intoxicated, told them, "I want some change from you, you, and you." When De Leon was told that they had no change, he asked whether they belonged to a gang and if they wanted to "rumble." Samuel Clemons replied that they didn't belong to a gang or want to fight. A second, larger group began to approach, and after making several more demands for money, De Leon attempted to punch Samuel Clemons. After moving out of the way, Samuel struck De Leon, and both brothers ran from the scene.

William Fletcher testified that after the Clemonses had run away, he struggled with members of the group and was thrown to the ground. When he got up, he saw De Leon holding a knife. De Leon told defendant Villegas to "look in his pockets." Villegas reached into Fletcher's pocket and removed 55¢ and two door keys. The police arrived within moments, and the group scattered in various directions. As De Leon was attempting to flee, Fletcher pushed him into the street. The police then arrested De Leon after Fletcher told them that he had been robbed.

Officer James Maurer of the Chicago Police testified that he was on patrol, driving an unmarked car, on the evening of November 18, 1973. With him were his partner, Officer Walter Murawski, and Sergeant Nick Miljanovich. They stopped for a red light at North and Leavitt and observed a group of eight to ten Puerto Rican men standing around one

black male. Officer Maurer testified that one of the men was "standing approximately two feet from the victim, and he had an object in his right hand, I believe, which was approximately four inches long, shiny resembled a knife blade." Another, identified as Villegas, had his hand in Fletcher's pocket and an arm around his body. As he was leaving the car, he heard the victim yell that he had been robbed. Villegas fled, running west on North Avenue. Officer Maurer gave chase and apprehended Villegas after firing two warning shots.

On cross-examination Officer Maurer stated that he did not complete or sign the arrest reports for either defendant although each bore his name and signature. He thought that Officer Murawski may have completed the reports since his name and signature also appeared.

Sergeant Miljanovich testified that he saw Fletcher grab for the man who had pointed an object at him, delaying him long enough for the sergeant to take him into custody. Sergeant Miljanovich identified the man as defendant De Leon. On cross-examination he stated that a knife was never found, and that 55¢ was recovered after a search of De Leon at the police station. The State then rested.

Terry Ray, a law student, testified for defendants that he worked for defense counsel and had interviewed William Fletcher. During the interview Fletcher gave three different answers in response to questions concerning who was holding a knife.

Defense counsel then requested that Officer Murawski be called as a witness since he apparently was the one who wrote the arrest reports. The State objected on the grounds that his name was not on the defense list of witnesses although his name did appear on the State's list. The court sustained the State's objection but allowed an offer of proof by the defense that, if called, Officer Murawski would testify that he completed arrest reports for each defendant stating that one of the offenders who was not arrested had displayed a knife and had fled.

The next witness was defendant Villegas who gave a different account of what occurred. He testified that he had been employed part time as a youth worker and had been playing basketball at a recreation center the evening of his arrest. Defendant De Leon was drinking at the center and had become intoxicated, and Villegas decided to take him home. They were walking on Leavitt Street when Fletcher and the Clemons brothers approached. Samuel Clemons asked them if they had any money. After Villegas told him that he didn't and resisted a search, Samuel Clemons attempted to punch him, and a fight ensued. The Clemonses fought with Villegas while De Leon struggled with Fletcher. Several friends of defendants saw what was happening and came to help, at which point the Clemons brothers ran. Fletcher attempted to flee also, but De Leon

continued to struggle with him. Villegas attempted to aid De Leon since Fletcher was overpowering him, and at that point the police arrived. Villegas stated that he ran from the police because they had their guns drawn, and that the situation could look as though he and De Leon were robbing Fletcher.

The testimony of defendant De Leon and his brother, Julio, who admitted to being present at the scene of the offense, corroborated Villegas' version of what occurred. On cross-examination defendant De Leon admitted that he did not tell the police immediately upon being taken into custody that he had been robbed.

The trial court, in a lengthy review of the evidence and after concluding that defendants had failed in their credibility as witnesses, remarked:

> "I would like to add another thing: we all know when you are under arrest that you don't have to say anything, the Fifth Amendment. Again, this is that but while this commotion was going on, it's just incredible to me that Mr. De Leon or Mr. Villegas didn't say these fellows are holding us up to the police plus what the police thought and I think the police are credible."

OPINION

■■ Defendants contend that it was error for the trial court to deny them the opportunity to call Officer Murawski as a witness since his testimony would have impeached the credibility of the State's witnesses on the issue of who was holding a knife. The State's witnesses testified that it was defendant De Leon who was holding an object which appeared to be a knife. The offer of proof by defense counsel was that Officer Murawski would testify that this arrest report stated that one offender who was not arrested had displayed a knife.

Supreme Court Rule 413(d)(i) (Ill. Rev. Stat. 1973, ch. 110A, par. 413(d)(i)) provides that defense counsel shall furnish the State with the names and last known addresses of persons he intends to call as witnesses. "The general justifications for discovery in criminal cases apply to discovery against the defense. Such discovery eliminates unfair surprise and allows the opposing party to establish the truth or falsity of the defense." (Committee Comments, Ill. Ann. Stat. 1973, ch. 110A, par. 413 (Smith-Hurd 1976 Supp.).) The trial court may, as a sanction, exclude a witness whose name is not furnished to the opposing party. (Ill. Rev. Stat. 1973, ch. 110A, par. 415(g).) Whether an unlisted witness should be allowed to testify is within the discretion of the trial court. (See *People v. Raby*, 40 Ill. 2d 392, 240 N.E.2d 595, *cert. denied*, 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867. *People v. Steel*, 52 Ill. 2d 442, 288 N.E.2d 355.)

Although *Raby* involved the prevalent type of case where the unlisted witness was allowed to testify for the State, the principles therein set forth are generally applicable. The court said at pages 401-02:

> " 'The purpose of the requirement that a list of witnesses shall be furnished the defendant is to prevent surprise and afford an opportunity to combat false testimony.' [Citations.] We have repeatedly held that 'allowing unlisted witnesses to testify is within the discretion of the trial court and in the absence of a showing of surprise or prejudice, that discretion will not be reviewed.' [Citations.] And the 'burden of showing surprise or prejudice is on the defendant.' [Citations.]"

Thus it is clear that the party claiming error has the burden of showing surprise or prejudice.

In the instant case Officer Murawski had been placed on the State's list of witnesses. Presumably the State was fully aware of what his testimony would be. The defense wished to call him as a witness on the basis of police reports which had been furnished by the State to the defense pursuant to discovery. It is difficult to envision how any surprise to the State could have resulted from allowing the police officer to testify. The trial court should have allowed Officer Murawski to be called as a defense witness.

Although the trial court erred in excluding him, this alone is insufficient to warrant reversal of defendants' convictions. A court of review will not reverse a conviction merely because error was committed unless it appears that justice has been denied or that the verdict of guilty may have resulted from the error. (*People v. Morehead*, 45 Ill. 2d 326, 259 N.E.2d 8, *cert. denied*, 400 U.S. 945, 27 L. Ed. 2d 251, 91 S. Ct. 251; *People v. Watts*, 19 Ill. App. 3d 733, 312 N.E.2d 672.) The defendants have failed to establish that they were prejudiced in any manner by the exclusion of Officer Murawski as a witness.

■■ Officer Murawski's testimony would have been relevant only to the issue of the credibility of the State's witnesses as to their testimony that De Leon was armed. The trial court found defendants guilty of robbery, expressly stating that there was a reasonable doubt that a knife was used during the commission of the offense. Armed robbery differs from robbery only in that the person committing the robbery must be armed with a dangerous weapon. (See Ill. Rev. Stat. 1973, ch. 38, pars. 18—1, 18—2.) When defendants were convicted of robbery, which did not require proof of being armed, any prejudice to defendants which may have resulted from the exclusion of Officer Murawski as a witness was negated since his testimony would only have been cumulative of an issue decided in their favor. *People v. Lyons*, 26 Ill. App. 3d 193, 324 N.E.2d 677.

■■ Defendants next contend that the conviction for the lesser charge of robbery indicates that the trial court questioned the credibility of the witnesses and, when considered together with defendants' explanation of the events, combine to support a finding that a reasonable doubt of guilt exists.

Defendants cite *People v. Ethridge,* 131 Ill. App. 2d 351, 268 N.E.2d 260, in support of their contention that the State's witnesses were of doubtful credibility since the trial court arrived at conflicting conclusions. In *Ethridge* two defendants were charged and tried for burglary, and only one of the defendants was convicted. Two police officers testified that they saw both defendants carrying goods out of a store at the same time, and a third officer testified that he saw the defendant who was acquitted leaving the building. Both defendants denied entry onto the premises. The appellate court reversed the conviction, stating that if the witnesses were not to be believed when they testified against one defendant, they were not to be believed when they testified against the other. *Ethridge* is clearly inapposite to the facts of the present case. Here the trial court ruled in a similar manner to each defendant. There was no conflict in its conclusion that there was a doubt that a weapon was used.

In *People v. Wilson,* 36 Ill. App. 3d 946, 344 N.E.2d 756, the defendant was indicted for armed robbery but convicted only of robbery despite positive testimony by the complaining witness that the defendant used a gun in committing the offense. We stated at 950, 951:

> "Defendant further claims that the trial court did not believe Fisher's testimony since it found defendant guilty of robbery, despite the witness' claim that defendant had a gun. However, the trial court stated that it based its conclusion that there was a reasonable doubt as to whether defendant was armed with a dangerous weapon upon the fact that no shots were fired and the gun was not recovered. (See *People v. Binion,* 80 Ill. App. 2d 130, 225 N.E.2d 485.) Extensive cross-examination of Fisher by defense counsel disclosed that Fisher saw the supposed weapon only briefly. Thus, it was not unreasonable for the trial court to conclude that a reasonable doubt existed on this point and still find the identification of defendant to be positive and credible."

As in *Wilson,* it was not unreasonable for the trial court to find that a reasonable doubt existed as to whether a knife was used. The only witness who claimed to have positively seen a knife was William Fletcher who saw it only briefly after having been knocked to the ground. Furthermore, Terry Ray's testimony indicated that Fletcher was confused as to who was holding it.

Defendants also cite *People v. De Stefano,* 23 Ill. 2d 427, 178 N.E.2d 393, for the proposition that a defendant's alternative hypothesis of

innocence is sufficient by itself to create a reasonable doubt of guilt. In *De Stefano* defendant was convicted of larceny of a motor vehicle. The central issue was defendant's intent in taking the automobile. The court held that since all of the facts were consistent with the defendant's stated intention to return the vehicle after getting coffee, a reasonable doubt existed that he intended to permanently deprive the owner of his property.

The instant case does not present a similar situation in which an explanation consistent with the State's evidence is offered. Defendant's version of the incident portrays Fletcher and the Clemons brothers as the aggressors. This is in direct conflict with the testimony of the State's witnesses.

Although the evidence clearly shows that there was an encounter between defendants and the complaining witness, there are conflicting versions of what transpired. In a nonjury trial where the evidence is conflicting, it is the function of the trial court, as the trier of the facts, to determine the credibility of the witnesses and the weight to be accorded their testimony. (*Wilson; People v. Heath*, 132 Ill. App. 2d 450, 270 N.E.2d 240.) A reviewing court will not substitute its judgment for that of the trial court on questions involving the credibility of the witnesses or the weight of the evidence. (*People v. Nicholls*, 44 Ill. 2d 533, 256 N.E.2d 818.) The judgment of conviction will not be disturbed on review unless the evidence is so unsatisfactory as to leave a reasonable doubt of guilt. (*People v. Hampton*, 44 Ill. 2d 41, 253 N.E.2d 385.) We find that the evidence was sufficient to sustain the convictions for robbery.

■■ Defendants' final argument is that the trial court committed error when it considered the defendants' silence at the scene of arrest as being indicative of guilt.

Upon reviewing the trial court's comments, it must be concluded that the judgments of conviction were based upon the positive, credible evidence presented by the State and not upon the defendants' failure to claim that they were the ones being robbed. After a lengthy review of the evidence, the trial court stated that it based its judgments upon the superior credibility of the State's witnesses. In making its remark concerning defendants' silence, the trial court acknowledged its cognizance of defendants' right to remain silent. (*Cf. People v. Wright*, 32 Ill. App. 3d 736, 336 N.E.2d 18.) The comment did not indicate that their silence was improperly considered in the determination of guilt. Furthermore, the record does not show that this conclusion was based upon any evidence adduced at trial. The only testimony concerning defendants' silence at the scene of arrest came briefly during cross-examination of defendant De Leon. He was asked whether at the time of the arrest he told the officer that he was being robbed. Without objection

he replied that he didn't. Since this testimony was not objected to, it cannot be the basis for any claim of error. (*People v. Trefonas*, 9 Ill. 2d 92, 136 N.E.2d 817.) Considering the judge's comment in its context as a parenthetical remark, and in light of the evidence of guilt that was presented, it cannot be said defendants' silence represented a material factor in the convictions and that the judgments would have been different were it not considered. *People v. Nicholls*, 42 Ill. 2d 91, 245 N.E.2d 771.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

LORENZ, P. J., and SULLIVAN, J., concur.