THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUDY MORALES, Defendant-Appellant.

First District (5th Division)   No. 81—306

Opinion filed September 10, 1982.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart and Donald I. Singer, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David Shapiro, and Sheila M. King, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant was convicted of possession of a controlled substance (heroin) after a jury trial and was sentenced to a term of three years' imprisonment. Defendant appeals his conviction presenting the following issues for review: (1) whether the warrantless search of the undercarriage of his parked automobile violated the Fourth Amendment; (2) whether the warrantless search of a closed jar seized from beneath his car violated the Fourth Amendment; and (3) whether the trial court erred by excluding an alibi witness on the ground that such witness was not disclosed in defendant's answer to the State's request for discovery. We affirm.

On January 22, 1979, at approximately 7:40 p.m., Officer Martin Conroy and Sergeant John Zitek of the Chicago Police Department received information from an informer, Oscar Alvarado, that defendant had just sold him a quantity of heroin. Both officers were in plainclothes and in an unmarked squad car. They proceeded to the 600 block of West 18th Street where they parked in a lot under an expressway overpass in a position to establish surveillance of a parked 1979 burgundy colored Ford Thunderbird auto at about 722 West 18th Street, and of the defendant, who was also on 18th Street standing near the northeast corner of Halsted Street.

For the next 45 minutes, the two police officers observed defendant from a distance of about one block. Sergeant Zitek's observations were made with the assistance of binoculars. Both officers testified that they observed defendant engage in conversation with an unknown individual, then walk alone to the corner of the parked Thunderbird, kneel down on the street at the rear of the auto and reach underneath the car. The defendant then walked back to the unknown individual with whom he was previously engaged in conversation, and there was an exchange of hands between them. This ritual was repeated several more times with either five, six or seven other individuals over the 45-minute period of observation. On each occasion, according to the offi-

cers' testimony, while there was an exchange of hands, the officers could not see what, if anything was exchanged or what was in defendant's hands or the hands of the individuals with whom defendant met. The officers also testified that they could not see what, if anything, was under the car.

At about 8:50 p.m. the two officers ended their surveillance and drove over to the parked Ford Thunderbird. At the time he was stopped by police, defendant was standing about six feet from that automobile, on the passenger or curb side and towards the rear of the auto. The defendant was searched by Officer Conroy and then by Sergeant Zitek. As Sergeant Zitek stood between defendant and Officer Conroy, Conroy knelt down on the street behind the Thunderbird, looked under the rear bumper, and saw a glass baby food bottle or jar attached to the underside of the auto with a wire. He untied the wire and took possession of the baby food jar. Sergeant Zitek testified that he did not see the bottle until it was brought out from under the car by Officer Conroy. Officer Conroy unlocked the auto with keys taken from the defendant, searched the car, locked up the vehicle and returned the car keys to defendant.

The officers proceeded to central police headquarters with defendant and the baby food jar. The jar was secured by a screw-on type cap. Through the jar a number of multicolored balloons could be seen. Officer Conroy opened the jar, opened a balloon, opened a tin foil packet, and tested its powder contents. The test indicated the presence of heroin, as did subsequent tests performed 45 days later by a Chicago Police Department chemist. A search warrant was not obtained at any time prior to the opening of the jar, the balloons, and the foil packets. At the preliminary hearing, defendant's motion to suppress was denied.

At trial the only witnesses offering testimony were Officer Conroy, Sergeant Zitek, the police chemist, and defendant. After the State had completed examination of its first witness, Officer Conroy, defendant moved to amend his answer to discovery to add the name of Viola Medillan to his list of witnesses. A hearing on the motion was held outside the presence of the jury. At that hearing defendant testified that he had not, prior to that day, advised his counsel of Ms. Medillan's existence or the import of her testimony. Defendant's motion was denied.

OPINION

Defendant contends that the warrantless search of his parked automobile was unconstitutional on several grounds. Initially defendant urges reversal on the "search incident to arrest" theory contending

that the search of the undercarriage of his automobile improperly extended beyond defendant's person and the area within his immediate control. *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034; *People v. Hendrix* (1974), 25 Ill. App. 3d 339, 323 N.E.2d 505.

We find the "search incident to arrest" theory unavailing under the facts and circumstances presented here. Unlike the situations addressed in *Chimel, Hendrix* and like cases, the police activity here was supported by probable cause. The police officers, operating on an informant's tip, observed defendant for some 45 minutes from a distance of one block. During this period defendant was observed kneeling and reaching underneath the rear of the vehicle, and then exchanging hands with another individual, repeating this ritual at least five times. On such facts the police officers could have reasonably believed that defendant was in possession of contraband and that such contraband was concealed in the undercarriage of the vehicle. Since the instant search was premised on probable cause, and not merely "incident" to the arrest, we think that the more important question before us is whether the warrantless search was justified under the "automobile exception" to the fourth amendment's warrant requirement as established in *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 227.

Defendant argues that the warrantless search of the closed containers (sealed baby food jar, balloons, and tin foil wrappers) exceeded the permissible scope of a search under the "automobile exception" as limited in the recent United States Supreme Court decisions in *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586, and *Robbins v. California* (1981), 453 U.S. 420, 69 L. Ed. 2d 744, 101 S. Ct. 2841. It is defendant's contention that since the secreted contraband was enclosed within three distinct containers, such containers could not be opened without a warrant under these cases.

Subsequent to the filing of the briefs in this court, and prior to oral argument, the United States Supreme Court filed its opinion in the case of *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157. We believe that this case is dispositive of the defendant's argument here.

In *Ross*, police officers, acting on information from an informant that the defendant was selling narcotics kept in the trunk of a certain car parked in a certain location, drove to the location, found the car and a short while later stopped the car and arrested the defendant.

One of the officers then opened the car's trunk and found a closed brown paper bag. After opening the bag he found several glassine bags containing white powder, later determined to be heroin. Also found was a zippered pouch containing cash. No warrant was obtained before opening these containers. In ruling that the warrantless search of the containers was justified, the Supreme Court departed somewhat from the line of reasoning in *Chadwick, Sanders* and *Robbins*. In an attempt at further "clarifying" the "automobile exception," the court stated that the scope of a warrantless search of an automobile "is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." (456 U.S. 798, 824, 72 L. Ed. 2d 572, 593, 102 S. Ct. 2157, 2172.) Thus, the *Ross* court held that the scope of a warrantless search authorized by the automobile exception recognized in *Carroll* "is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 U.S. 798, 825, 72 L. Ed. 2d 572, 594, 102 S. Ct. 2157, 2172.

■ In the instant case we have held that the search of the undercarriage of defendant's parked car was justified by probable cause. Thus, applying the *Ross* interpretation of the fourth amendment, we believe that the police officers were justified in probing into the glass jar and the containers enclosed therein in their search for the contraband.

It is noted that defendant has urged in oral argument that *Ross* is inapplicable to the situation at bar essentially on two grounds. First, it is suggested, without citation to authority, that the automobile exception recognized in *Carroll* and *Ross* does not apply where an automobile was not "stopped" by police officers, but rather was stationary prior to the search.[1] This distinction is without merit. The fact that

[1]Defendant here relies on a footnote to the dissenting opinion of Justice Marshall in *Ross*. (*United States v. Ross* (1982), 456 U.S. 798, 828 n.1, 72 L. Ed. 2d 572, 596 n.1, 102 S. Ct. 2157, 2174 n.1 (Marshall, J., dissenting).) There Justice Marshall commented that he felt that the *Ross* holding was confined to automobiles "stopped" on the highway. Justice Marshall stated "I do not understand the Court to address the applicability of the automobile exception rule announced today to parked cars. *Cf. Coolidge v. New Hampshire,* 403 U.S. 443 (1971)." Crucial to *Coolidge,* however, was that the seizure of the cars occurred on defendant's private property and thus the cars were seized from a place where the police had no right to be. The importance of this factor was pointed out in *Cardwell v. Lewis* (1974), 417 U.S. 583, 593, 41 L. Ed. 2d 325, 336-37, 94 S. Ct. 2464, 2471. (See *People v. Davis* (1981), 93 Ill. App. 3d 217, 416

the car in *Ross* was seized after being driven on the roadway, whereas defendant's car was seized while parked in a public place, has little, if any, significance in terms of the fourth amendment. (See, *e.g.*, *Cardwell v. Lewis* (1974), 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (seizure in a public parking lot held reasonable); *Cady v. Dombrowski* (1973), 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (seizure of car disabled on roadway held reasonable); *People v. Davis* (1981), 93 Ill. App. 3d 217, 416 N.E.2d 1197 (seizure in public place held reasonable); but *cf. Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (seizure on private property held not reasonable).) Here the facts furnishing probable cause to search the automobile arose while the vehicle was in defendant's possession while parked on a public roadway. It would certainly be an exercise in futility to require the police to wait until defendant had moved his automobile some distance before conducting a search otherwise reasonable based on the "automobile exception." We find that the crucial facts in *Ross* are similar to those in the present case. Both in *Ross* and in the present case the searches of the automobiles were based on probable cause to believe the cars were instrumentalities used in crimes and that contraband was concealed somewhere therein. Accordingly, we do not find *Ross* distinguishable from the present situation on the grounds suggested by defendant.

■ Next defendant has contended that *Ross* cannot be applied retroactively to the present case. This contention is dispelled by the *Ross* court's expression that its holding is "faithful to the interpretation of the Fourth Amendment" followed by the Supreme Court throughout its history. (456 U.S. 798, 824, 72 L. Ed. 2d 572, 593, 102 S. Ct. 2157, 2172.) Moreover, the court interestingly noted that "[a]ny interest in maintaining the status quo that might be asserted by persons who may have structured their business of distributing narcotics or other illicit substances on the basis of judicial precedents clearly would not be legitimate." (456 U.S. 798, 824 n.33, 72 L. Ed. 2d 572, 593 n.33, 102 S. Ct. 2157, 2172 n.33.) Suffice it to say we deem *Ross* to be applicable to the case at bar.

Finally, defendant contends that the trial court committed reversible error in excluding a defense alibi witness on the grounds that the witness' name had not been submitted to the State in response to discovery as required under Supreme Court Rule 413(d)(i) (73 Ill. 2d R. 413(d)(i)).

---

N.E.2d 1197.) Unlike the *Coolidge* situation, the defendant here was in possession of his car on a public roadway when the arrest was made, a situation, we feel, requiring no practical or legal distinction from the "stop" involved in *Ross*.

It is within the trial court's discretion to admit testimony of unlisted witnesses (*People v. Banks* (1981), 102 Ill. App. 3d 877, 430 N.E.2d 602; *People v. De Leon* (1976), 40 Ill. App. 3d 308, 352 N.E.2d 234), and the exercise of that discretion will not be disturbed absent a showing by the accused of resulting prejudice or surprise. (*People v. Jordan* (1967), 38 Ill. 2d 83, 230 N.E.2d 161; *Banks*; *De Leon*.) Under the circumstances herein presented the defendant has failed to establish that he was prejudiced in any manner by the exclusion of Viola Medillan as a witness.

■ Defendant testified that during the period of time that the police officers observed him, he was in a tavern in the company of Medillan. Although no offer of proof was made, Medillan's testimony would have been relevant to the issue of the credibility of the police officer's observations during the time in question. Defendant, however, was found guilty of possession of a controlled substance, not its sale during this time. It is not contested that defendant was arrested within six feet of his automobile or that the heroin was found by the officers secreted beneath the car. In the instant case we believe there was overwhelming evidence of defendant's guilt of possession of heroin. Thus assuming the trial court erred in excluding the witness, we do not find sufficient grounds here for reversal.

For the foregoing reasons, we affirm defendant's conviction.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.