(No. 40241.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* SYLVESTER HUBBARD, JR., Appellant.

*Opinion filed September 29, 1967.*

WARD, J., took no part.

VERNON T. SQUIRES, of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED

G. LEACH, Assistant Attorney General, and ELMER C. KIS-SANE and JOEL M. FLAUM, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Sylvester Hubbard, was found guilty on two separate indictments for rape which were consolidated for trial in the circuit court of Cook County in 1964. He was sentenced to the penitentiary for a term of 40 to 60 years. The Appellate Court, First District, affirmed the conviction. 73 Ill. App. 2d 302. We granted leave to appeal.

The defendant contends that the evidence failed to establish his guilt beyond a reasonable doubt and that the testimony relating to his alleged confession was improperly admitted into evidence since the State failed to produce a list of witnesses to the oral confession in compliance with section 114—10 of the Code of Criminal Procedure. Ill. Rev. Stat. 1963, chap. 38, par. 114—10.

The State's evidence consisted of the testimony of a police officer and of the two women who said they were raped by the defendant. The first to testify was Blanche Jeffries, who said that on January 30, 1964, the date of the alleged rapes, she lived in an apartment at 7130 South Carpenter Street in Chicago. The premises consisted of a two-story residence with a basement apartment rented by Mrs. Jeffries. Also living in the building were Mrs. Newsome and her daughter, Mrs. Boyd, who occupied the first floor, and Carrelle Drake, the other complaining witness and her daughter, who occupied the second-floor apartment. Mrs. Jeffries had three children and Mrs. Boyd had four children, all living in the building on the date in question.

Mrs. Jeffries stated that she knew the defendant prior to January 30 and had seen him on the premises on previous occasions. Mrs. Jeffries testified that on the date of the alleged rapes she was on the first floor visiting with Mrs.

Boyd and that at various times the defendant came into Mrs. Boyd's apartment to borrow various items. At about 3 :30 or 4 :00 P.M. the defendant entered the first floor apartment with a rifle; both she and Mrs. Boyd admired the weapon and called Mrs. Newsome in to see it. She went on to testify that the defendant then forced her to go to Mrs. Drake's apartment on the second floor at rifle point and began to rape her, despite her pleas that she was pregnant and had an infection. While the defendant was raping Mrs. Jeffries, a key was heard in the door. Defendant told Mrs. Jeffries to get dressed and he went downstairs to see who was there. The record is not clear as to whether the defendant took the rifle with him or whether he left it on the bed beside Mrs. Jeffries. According to Mrs. Jeffries, after the key was heard in the door, the defendant "told me to get up and put my clothes on. Then he ran down the stairs and checked to see who it was. So when he came back he said, 'That's Carrelle', he says, 'And I don't want you to try anything.' So he left the gun laying on the side of the pillow, where it had been while he was raping me and he says, 'You know better than to bother it.' I says, 'Well, I wasn't thinking about bothering the gun.' Then he says, 'Well, you don't know how to work it anyway.' Then he picked the gun up and he says, 'If you try anything I am going to blow your brains out.' I says, 'I am not going to try anything.' And he went back downstairs * * *."

In any event Mrs. Jeffries remained in the second floor apartment while the defendant went down to meet Carrelle Drake.

Mrs. Jeffries went on to testify that both Mrs. Drake and the defendant entered the second floor apartment. At this point the defendant told Mrs. Jeffries to tell Carrelle Drake what was happening and then bound Mrs. Drake with a belt and took Mrs. Jeffries into another room where he again raped her. He then tied up Mrs. Jeffries and raped Mrs. Drake. Subsequently, as Mrs. Jeffries testified, all of

them went down to the basement apartment where they were joined by the children. They remained there for about an hour but what transpired during that time is not revealed in the record.

Mrs. Carrelle Drake testified that she returned to the building from work at approximately 5:30 P.M. on the day in question. Instead of going directly to her apartment on the second floor, she entered Mrs. Boyd's first-floor apartment where she encountered Mrs. Boyd and the defendant. She had also known the defendant previous to the day in question. She asked the defendant what he was doing and he replied that he was just visiting. After this conversation he went back upstairs to Mrs. Drake's apartment. She followed him and saw Mrs. Jeffries sitting on the bed. She didn't mention seeing any rifle until she entered the apartment. The rest of her testimony supports the evidence given by Mrs. Jeffries. Neither witness referred to defendant's rifle during the hour they spent in the basement after the alleged rapes.

Officer Vander Kamp testified that he first saw the defendant at the Seventh District Police Station at approximately 11:00 P.M. on the day of the alleged rapes. At this time he conducted a line-up wherein Carrelle Drake, Blanche Jeffries, Mrs. Newsome and Mrs. Boyd viewed and identified the defendant from a group of four men. After the line-up, while escorting the defendant to another room, the officer stated that he asked the defendant what he had to say about the accusation. To this question, the defendant replied, "Yes, I did it." The officer then escorted the defendant into a room where he took a statement from Carrelle Drake and Blanche Jeffries.

We shall first consider defendant's contention that the evidence fails to establish his guilt beyond a reasonable doubt. He argues that the testimony of the two complaining witnesses is incredible. The appellate court agreed that the testimony of the women was "inherently weak" and went

on to state that they would reverse the judgment if it were not for the testimony of officer Vander Kamp relating to the oral confession.

After a careful review of the entire record we likewise are of the opinion that the testimony of the complaining witnesses standing alone is not sufficiently convincing to support the conviction for rape. Mrs. Jeffries testified that she was carrying on a conversation with Mrs. Newsome and Mrs. Boyd when she was forced upstairs by the defendant. However, no explanation has been offered as to why neither Mrs. Newsome nor Mrs. Boyd called the police or otherwise sought help when Mrs. Jeffries was abducted at gun point. Again, there is no explanation of why Mrs. Jeffries made no attempt to escape or call out for help when she was left alone in the second-floor apartment while the defendant was downstairs. Furthermore, the testimony suggests that when the defendant encountered Carrelle Drake on the first floor he had no rifle, and that he had in fact left it upstairs with Mrs. Jeffries. We also note that no explanation has been offered as to what transpired in the basement apartment for one hour after the alleged rapes took place. Although one of the witnesses testified that all the women and several children were present during that hour, there is no indication that the defendant was still armed with his rifle or that he otherwise held them captive.

Finally, we are confronted with the absence of any evidence showing that a prompt complaint was made by either of the witnesses. Mrs. Drake testified that she was raped at approximately 6:45 P.M. and that the defendant left the premises at around 8:00 P.M. Both witnesses next saw the defendant at the police line-up at 11:00 P.M. that night. There is no mention of who notified the police or when such notification was made. Reviewing the testimony of the two complaining witnesses in the light of these factors, we are unconvinced of the defendant's guilt.

While agreeing with the appellate court's finding as to

the testimony of the women, we do not agree that the evidence of the oral confession is sufficient to uphold the conviction. The defendant first contends that evidence of the confession should not have been admitted into evidence at all, since the State failed to produce a list of witnesses in accordance with section 114—10 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1963, chap. 38, par. 114—10.) The record shows, however, that no request for such a list was ever made by the defendant, nor was the testimony relating to the confession objected to at the trial. By failing to call the alleged error to the trial court's attention by appropriate objection, defendant waived his right under the statutory requirement and cannot for the first time raise the issue in a reviewing court. *People* v. *Seno,* 23 Ill.2d 206.

Notwithstanding the admissibility of the confession, however, we are of the opinion that it was not sufficiently corroborated to support the conviction. The State, while agreeing with the established rule that a naked uncorroborated confession is insufficient to convict, (*Bergen* v. *People,* 17 Ill. 426; *People* v. *Pry,* post, p. 261,) relies on *People* v. *Gavurnik,* 2 Ill.2d 190, and contends that this rule is inapplicable since the testimony of the witnesses, although perhaps not sufficient in itself, corroborates the confession to sustain the conviction. In *Gavurnik* we held that if there is evidence of corroborating circumstances which tend to prove the *corpus delicti* and correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case. (*People* v. *Borrelli,* 392 Ill. 481.) The same evidence may be used to prove both the existence of the crime and the guilt of the defendant, the test being whether the whole evidence proves the fact that a crime was committed and that the accused did it. (*People* v. *Brown,* 379 Ill. 262; see also *People* v. *Pry.*) Here, however, the evidence supporting the confession is so weak as to defy belief, and we cannot,

therefore, reasonably state that it gives any corroboration to it.

Reviewing courts are especially charged with the duty of carefully examining the evidence in rape cases, (*People* v. *Faulisi,* 25 Ill.2d 457; *People* v. *Qualls,* 21 Ill.2d 252,) and it is the duty of the reviewing court not only to consider the evidence carefully but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty of the crime charged. *People* v. *Qualls.*

We conclude that the evidence produced by the State, including the oral confession, is not sufficient to support defendant's conviction of rape. Accordingly the judgments of the trial and appellate courts are reversed.

*Judgments reversed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.