**People of the State of Illinois, Plaintiff-Appellee, v. John J. Torello, Defendant-Appellant.**

Gen. No. 52,850.

First District, First Division.

April 21, 1969.

Rehearing denied May 19, 1969.

Samuel V. P. Banks, and Anna R. Lavin, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a 2-count indictment, defendant, John J. Torello, Michael LaJoy and Joseph D'Argento were charged with "theft" and "criminal trespass to vehicle." On June 29, 1966, D'Argento pleaded guilty. In August 1967, a jury found Torello and LaJoy guilty of both charges. They were each sentenced to terms of two to five years on the theft count and two to five years on the trespass count. The instant appeal was perfected by Torello only.

On appeal, defendant Torello's contentions are: (1) Count I fails to charge a crime; (2) the record was deliberately permeated with evidence distinct and entirely unrelated to the charges brought to the intentional prejudice of the defense; (3) reversible error was committed

in denying to defendant a prior statement of the State's principal witness; (4) the State failed to prove this defendant guilty beyond reasonable doubt; and (5) the court erred in its instructions to the jury and in failing to instruct as requested by the defense.

Count I of the indictment alleges that on May 2, 1965, the three defendants "committed the offense of theft, in that they, knowingly obtained unauthorized control over an automobile, of the value of more than one hundred fifty dollars, the property of Thomas Vana, intending to deprive said Thomas Vana permanently of the use and benefit of said property, in violation of Chapter 38, Section 16, (a) [sic], of the Illinois Revised Statutes 1963." Count II charged defendants with "the offense of criminal trespass to vehicle, in that they, knowingly and without authority entered a vehicle, to wit: an automobile, the property of Thomas Vana, and without the consent of said Thomas Vana, in violation of Chapter 38, Section 21–2, of the Illinois Revised Statutes 1963."

The testimony for the State shows that an automobile belonging to Thomas Vana was stolen on the evening of May 2, 1965. He made an auto theft report at about 9:45 p. m. Shortly thereafter, Police Officer Nissen, a member of the City of Northlake Police Department, observed a parked car with a man looking out the back window—"He had a cloth over his face. As I pulled up behind the car, the car proceeded to drive away from me. I was driving a marked squad car." He put the red light on. By police radio, he reported to the Northlake police station that he was following a car—"there were three subjects in the car and two of them masked." He continued pursuing the car at speeds which varied between 50 and 80 miles per hour. After an extended pursuit, participated in by the Melrose Park police, the car being pursued stopped against a curb, and Nissen fired four shots into the car. Nissen ran over to the side of the car and informed the parties they were under arrest. As

he opened the door of the car, Torello fell from the driver's seat.

Vana testified that he did not know D'Argento, Torello nor LaJoy, nor did he give them authority to take custody of his car.

The only witness for the defense was D'Argento, who testified that he had stolen Vana's car without the knowledge of either Torello or LaJoy. He was carrying a gun in his belt and put the gun under the passenger's seat. Later he met Torello and LaJoy, and he asked Torello to drive because he wanted to discuss business with LaJoy. While they were parked on a side street a police car pulled up and flashed a light. D'Argento told Torello to take off and get going because it was a stolen car, and if he (D'Argento) was arrested, he would lose his appeal bond (for a federal offense) and would have to go to jail.

D'Argento further testified that while he was in the car, no one had hoods over their heads nor was there any cloth covering on anyone's face. No one threw anything out of the automobile during the chase. "At first Torello did not want to go, then I reached down and got my gun and told him it was a stolen car. I pulled it out like this and told him to get going. I had the gun in my hand." He had pleaded guilty "to this particular charge before Judge White" and received a sentence of ten years.

Defendant Torello was found guilty in two separate jury verdicts of theft and of criminal trespass to vehicle, and the court entered judgment on both verdicts.

Considered first is defendant's contention that Count I fails to charge a crime. Count I was the "theft" charge. After relating the essential elements of the crime of theft, Count I included "Chapter 38, Section 16(a), of the Illinois Revised Statutes 1963." Before the commencement of the trial, the court denied defendant's motion to dismiss the indictment because there was no section 16 (a) in the Criminal Code of Illinois. Leave was granted

to the State to insert " 'dash 1,' after the 16," so that after amendment the section alleged to be violated was designated as "Section 16–1(a)" instead of "Section 16(a)."

■ We find no merit in defendant's contention as to Count I. In this case the incomplete numerical designation of the section violated was a formal defect which could be corrected under the provisions of section 111–5 (c 38), entitled "Formal Defects in a Charge." Defendant was not prejudiced by the section number amendment because Count I alleged all of the essential elements of the offense of theft, as stated in section 16–1(a), and "so far particularize[d] the offense" so that defendant was apprised with reasonable certainty of the precise offense with which he was charged. See People v. Gold, 38 Ill2d 510, 516, 232 NE2d 702 (1967); People v. Hall, 55 Ill App2d 255, 204 NE2d 473 (1964).

Considered next is defendant's contention that the only real issue in this case as to him was whether he had knowledge that the Ford was stolen—"That, and that alone, was all the jury was to decide. That issue was obscured to the point of obliteration by the State's misconduct in the introduction of the prejudicial evidence."

Prior to the trial the defense was given a list of physical evidence that the State intended to introduce. On the list were three pistols and two cloth masks. After a hearing about the propriety of the intended proof, the court ruled that "even though they may be evidence of another crime, if they are properly part of this case, then they are evidence in this case."

During the trial, frequent reference was made to the masks and guns by the officers who participated in the chase and subsequent investigation.

Officer Nissen testified that when he began the chase he noticed that the man in the back seat and the one on the passenger's side were masked; that an object was thrown from the passenger's side during the chase, and when he returned to the approximate vicinity three and

438

one-half hours later, he found a snow mask. He further testified that when the Ford stopped after going out of control, the passenger in the front seat displayed a gun, which he dropped into the back seat, and that he (Nissen) found a .357 magnum in the back seat.

For the State, a nurse's aide testified that it was she who admitted defendant Torello to the 4th floor at Westlake Hospital for treatment for head and leg bullet wounds after the arrest. She said that when she undertook to examine and inventory defendant's clothing and valuables, she found a mask.

State's witness Police Sergeant James Diaferia testified that he went to the receiving room at the hospital and was given a mask by someone; also, at about 10:15 p. m. on May 2, he had a conversation with two unidentified women, and then went 30 or 40 feet south from the point of arrest and picked up a loaded gun, a .357 loaded magnum.

The People's exhibits, admitted into evidence over defendant's objection, included Exhibit 4, the mask which was found on the street by Officers McKenzie and Nissen; Exhibit 5, a .357 magnum identified by Officer Nissen as the pistol that was dropped into the back seat of the car by D'Argento; and Exhibit 7, the mask identified by the nurse's aide.

Defendant's authorities on this point include People v. Donaldson, 8 Ill2d 510, 134 NE2d 776 (1956) ; People v. Hexum, 83 Ill App2d 192, 226 NE2d 877 (1967) ; and People v. Doyle, 76 Ill App2d 302, 222 NE2d 205 (1966). In Donaldson, it is said (p 517) :

> "Evidence which tends to show that an accused has committed crimes or acts of misconduct which are distinct and entirely unrelated to the one for which he is being tried is both incompetent and prejudicial."

█ As knowledge on the part of defendant Torello that he was driving a stolen car was an essential element

here, we believe the testimony as to the guns and masks and their admission into evidence was proper. As argued by the State, this evidence was admissible as part of a direct narrative of the circumstances surrounding the arrest of Torello. See People v. Alexander, 69 Ill App2d 27, 216 NE2d 180 (1966). Also, we consider the evidence to be within the guidelines of People v. Allen, 17 Ill2d 55, 63, 160 NE2d 818 (1959):

> "The test of admissibility of evidence is whether it fairly tends to prove the particular offense charged and any circumstances may be put in evidence which tend to make the proposition at issue either more or less probable."

We think a jury might have reasonably found from this evidence that Torello knew the car he was driving was stolen. We find no error here.

Considered next is defendant's contention that reversible error was committed in denying to defendant a typewritten summarization of Nissen's testimony before the Grand Jury, referred to as "a thumbnail sketch." Defendant sought to examine this statement for impeachment purposes during Nissen's cross-examination. Out of the presence of the jury, the State tendered the statement to the trial judge for "in camera" inspection. The judge read the statement and stated to the attorneys that he found "absolutely nothing inconsistent in his Grand Jury testimony or the so-called Prep statement . . . that can possibly be used as a basis for impeachment." The judge ruled that he would let the defendant see the statement but would not let it be used for impeachment purposes. The defense refused to examine it, and the court sustained the State's objection to its production.

Defendant argues that the prosecution is required to furnish on demand to defendant, for impeachment purposes, specific statements in its possession made by

State's witness, which have been established to exist and which are in the witness's words or substantially verbatim. Authorities include People v. Neiman, 30 Ill2d 393, 197 NE2d 8 (1964).

█ The State argued that the statement was not substantially the language of Nissen, and the defense had been furnished the full transcript of Nissen's testimony before the Grand Jury for impeachment purposes, if any impeaching material was contained therein. The State noted that this was a preparation sheet in the nature of the work product of the office of the State's Attorney, and it would be unfair and improper to take these preparation sheets and compel a witness to stand for impeachment on them for some inconsistency which might exist between that witness at the trial and what had been verbally sketched out on the sheet by another person. We find no error here. It is clear that the statement was a summarization of Nissen's Grand Jury testimony, not prepared by him and not in his language. See People v. Neiman, 30 Ill2d 393, 397, 197 NE2d 8 (1964) :

"The law is well settled that the prosecution is required to furnish on demand to the defendant for impeachment purposes specific statements in its possession made by a State's witness, which have been established to exist and which are in the witnesses' own words or substantially verbatim."

Defendant next contends that he was not proved guilty beyond a reasonable doubt. Defendant argues that "mere presence at the scene of a crime is insufficient to establish guilt." (People v. Boyd, 17 Ill2d 321, 327, 161 NE2d 311 (1959).) Flight, "standing alone . . . will not sustain the guilty finding"—"something must be brought in to sustain knowledge before flight takes on any significance." Defendant cites Embree v. United States, 320 F 2d 666, 668 (9th Cir, 1963), where it is said:

441

"Perhaps Embree's flight tends, circumstantially, to prove that he was guilty of some crime. But since there is nothing in the record to indicate that he was informed, before his attempted flight, that he was being sought in connection with the offenses involved in this case, such flight does not constitute an admission, or other evidence, that he is guilty of those crimes."

We find no merit in this contention. The record clearly shows that defendant was the driver of a stolen car, and he was arrested after a long and speedy chase. Masks and guns were found either in the car or under circumstances which clearly connected them with defendant. The jury saw and heard the various witnesses who testified, and it was their function to determine the relative weight and credibility of the testimony of each of those witnesses. The jury chose not to believe D'Argento's testimony that Torello did not know that the car was stolen, and that he forced Torello to drive the car in an effort to escape the arrest. There was ample evidence to support the verdict and to establish defendant's guilt beyond a reasonable doubt. In People v. Novotny, 41 Ill2d 401, 244 NE2d 182 (1968), it is said (pp 411–12) :

"We have recently stated: 'When the trier of facts renders a decision based upon credible and substantial evidence which is sufficient to convict, that verdict is not subject to question on review merely because the judge or jury chose to believe the consistent testimony presented by the State. . . .' It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses . . . ; and we will not reverse a criminal con-

442

viction where the evidence is not so improbable as to raise a reasonable doubt of guilt."

Next considered is defendant's contention that the Circuit Court erred in instructing the jury and improperly refused defendant's instructions on want of knowledge and flight. The defendant states that his defense was a want of knowledge by him that he was in a stolen car, and an explanation of his flight which followed his reluctance to flee when an armed man told him to "get going."

We have examined all of the instructions given to the jury, which included a number of instructions offered by both defendants. An extended discussion on the refused instructions is unnecessary. We find the jury was adequately instructed on both counts—theft of an auto and criminal trespass to vehicle—and on all issues including defendant's knowledge that the car was a stolen vehicle and his flight. We find no error here.

Finally considered is a contention initially raised by defendant in his reply brief. Defendant states: "On careful review of the abstract in this case, it appears that the defendant Torello was convicted of the crime of criminal trespass to a vehicle on which he was sentenced to a period of two to five years. This fact escaped appellate counsel on the first reading. Criminal trespass to a vehicle is defined in Chapter 38, Section 21–2 and carries a sentence not to exceed one year in a nonpenitentiary institution. The sentence imposed herein is, therefore, illegal."

The record shows that defendant's notice of appeal referred only to "theft, in violation of Chapter 38, Section 16(a) of the Illinois Revised Statutes" (Count I). Also, the record does not show any order or direction that the sentences for "theft" and "criminal trespass to vehicle" be served concurrently. The briefs and contentions of both sides are primarily centered on the "theft" conviction.

443

██ In view of the appeal record, it might be questioned whether this court may properly consider defendant's conviction and sentence for "criminal trespass to vehicle." However, we believe that Supreme Court Rule 615 is sufficient authority for this court to review the "criminal trespass to vehicle" conviction because substantial rights of the defendant are affected. In People v. McKinstray, 30 Ill2d 611, 616, 198 NE2d 829 (1964), it is said:

> "The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing on the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented."

See, also, People v. Bradley, 30 Ill2d 597, 601, 198 NE2d 809 (1964).

██ In our opinion, defendant's convictions for "theft" and for "criminal trespass to vehicle" are based upon a single act, and only one sentence should have been imposed and that sentence should have been for the greater offense, in this case the offense of "theft." (People v. Duszkewycz, 27 Ill2d 257, 261, 189 NE2d 299 (1963).) Therefore, the sentence imposed on the charge of "criminal trespass to vehicle" should be set aside.

For the reasons given, the judgment and sentence of the Circuit Court of Cook County upon Count I of the indictment charging "theft" is affirmed, and its judgment upon Count II charging "criminal trespass to vehicle" is reversed.

Affirmed in part and reversed in part.

ADESKO, P. J. and BURMAN, J., concur.