THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BRAD JONES, Defendant-Appellant.

Fifth District   No. 77-331

Opinion filed July 31, 1979.

G. MORAN, J., dissenting.

Hogan and Jochums, of Murphysboro, for appellant.

Thomas H. Sutton, State's Attorney, of Carmi (Bruce D. Irish and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

After a jury trial in the circuit court of White County, defendant, Brad Jones, was found guilty of several offenses, including calculated criminal cannabis conspiracy (Ill. Rev. Stat. 1977, ch. 56½, par. 709(b)), unlawful possession of more than 500 grams of cannabis with intent to deliver to a person under 18 years of age (Ill. Rev. Stat. 1977, ch. 56½, pars. 705(e), 707(a)), unlawful delivery of more than 30 but not more than 500 grams of cannabis to a person under 18 years of age (Ill. Rev. Stat. 1977, ch. 56½, pars. 705(d), 707(a)), and unlawful possession of more than 500 grams of cannabis (Ill. Rev. Stat. 1977, ch. 56½, par. 704(e)). Defendant was thereafter sentenced on these named offenses to four concurrent terms of imprisonment all of which were one to three years except that for possession with intent to deliver which was one to five years.

The defendant raises the following issues on appeal: (1) whether procedural irregularities deprived the trial court of jurisdiction to proceed to judgment in this case; (2) whether defendant was proved guilty beyond a reasonable doubt of calculated criminal cannabis conspiracy and unlawful delivery of more than 30 grams but not more than 500 grams of cannabis to Jim Watkins; (3) whether the court erred in refusing the issues instructions tendered by defendant; (4) whether the court erred in denying defendant's motion to dismiss the count charging him with unlawful possession of more than 500 grams of cannabis with intent to

deliver to a person under 18 years of age; (5) whether the court erred in entering judgments and sentences on both the possession of cannabis and possession of cannabis with intent to deliver charges and both the delivery of cannabis and calculated criminal cannabis conspiracy charges; (6) whether the elements of the enhanced penalty provision (Ill. Rev. Stat. 1977, ch. 56½, par. 707(a)) were sufficiently proved with respect to the delivery of cannabis charge; and (7) whether the court abused its discretion in denying defendant probation.

Louis Vas, an alleged co-conspirator of defendant, testified as follows. At the time of trial he was residing in the city-county jail serving six months periodic confinement because of his conviction of the crime of calculated criminal cannabis conspiracy after a plea of guilty. Involved in the conspiracy with him were Brad Jones, Kathi Jones, and Keith Wells. He was to supply $800 to buy six pounds of cannabis. He and Jones were to get a half pound each from it as profit. They talked about this arrangement the first time on the 6th of March, 1977, and again the weekend of the 12th of March. He was to supply the money and Jones was to sell the cannabis. On March 13, 1977, he talked with Keith Wells and Dennis Odell. Vas was to put up the money and Jones and Wells were to make the other arrangements. The price was set at $135 per pound. On Monday, March 14, he went to the Joneses' carpet store in Carmi and delivered $800 in cash. He, Brad Jones and Kathi Jones were present. He gave the money to Kathi Jones. There was no discussion at this time about what the $800 was for.

That evening, March 14, he went to Brad and Kathi Jones' house in Brownsville and waited with Brad and Kathi until 5:30 or 6 a.m. the next morning for the cannabis to come in. Jones had told him it would come in that evening. The cannabis did not come in that night, but Jones informed him at 8:30 a.m., the next day, March 15, that the cannabis had come in; that Jones had it stashed and that he would let him try some. He met Jones later that day and Jones gave him a marijuana cigarette which Jones told him came from that shipment. Defense counsel objected to this testimony, but the evidence was admitted as being relevant to the charge of conspiracy. Present during this incident were Vas, Jones and Dennis Hite. Vas smoked the cigarette. In his opinion, the cigarette contained marijuana. Its texture, color and composition resembled marijuana and he received a "high" from smoking it. As foundation for this opinion testimony, the prosecutor elicited the following information from Vas. He had smoked marijuana regularly since 1969, or eight years, and was familiar with the "high" one gets from smoking it as well as how it looks and smells.

The next time Vas and Jones got together was on the 15th of March at Brad Jones' house. Vas, Brad Jones, Kathi Jones and Keith Wells were

present. There were about six pounds of marijuana lying around a chest in the living room. It was in one-pound bricks. They all smoked some of it. They also cleaned it, bagged it, and got two pounds ready for sale. They used a gram scales and tried to put an ounce in each sandwich bag. After they smoked some of the marijuana, Vas stated that it was fair stuff for being Mexican. Defendant agreed with this characterization. In Vas' opinion, the substance was marijuana. It was agreed that the greatest part of the marijuana, that which was for sale, would be kept at the Jones residence.

On Tuesday, March 22, Vas received $300 cash from Brad Jones, on Wednesday, the 23rd, $150 in cash, and on the 25th, the day "we" got arrested, he received $300. It was agreed this cannabis would be sold for $50 a quarter. A quarter is four ounces. This agreement was made on the 16th of March. Dennis Hite was present. The remaining cannabis was broken down by Brad Jones and Vas on March 23 and put in a garbage bag.

Mark Hall, a White County deputy sheriff testified that on March 24, 1977, he participated in "an investigation trying to set up a buy involving one Jim Watkins." Over objection he testified that around 5 p.m. he told Watkins to purchase some marijuana. Watkins later delivered eight or nine packages of marijuana to him. He labeled it and turned it over to the custody of the sheriff. The sheriff put it in the evidence locker for security and that was the last he saw of it.

Brenda Carlton, age 19, testified for the defense that she was in a car with Jim Watkins on March 24, 1977, when Mark Hall and another police officer picked them up and took them to the police station. Watkins went with Hall and she went with the other officer. She was questioned, searched, and then let go. She did not say what happened to Watkins.

Dennis Hite testified for the State about a marijuana transaction which involved Brad Jones and 17-year-old Jim Watkins. Hite said that Watkins asked about buying a half-pound of marijuana on the morning of March 24, 1977, and that later that same day he and Watkins went to the Jones residence to make a purchase. Hite and Watkins met Brad Jones on the way to the Jones house and Hite informed defendant that he was with a "boy" who wanted to buy some marijuana. Defendant told Hite to go to his house and wait for his and Kathi's return from town. When Brad and Kathi Jones arrived at the house, Hite went inside to pick up the marijuana while Watkins remained in the car. Hite gave defendant $110 he had received from Watkins and took a half-pound of marijuana which defendant removed from a garbage bag in the living room out to Watkins who then left. Hite testified that he had made a number of similar purchases from defendant during the week preceding March 24. He also testified that he had been convicted of unlawful delivery of cannabis for

the sale to Jim Watkins on March 24 and that he was presently serving a prison sentence for that offense.

Hite, over the objection of the defendant, testified that the substance he obtained from Jones on March 24 was in fact marijuana. He said that he had used marijuana for "six months to a year." He had smelled it; he had smoked it, and he had seen what it looked like. This particular marijuana was in sandwich-like form. He did not smell it or smoke it. He described it as green and leafy. The court held that this testimony properly qualified Hite to testify that the substance obtained from Jones was marijuana.

On March 25, 1977, warrants for the arrest of Brad and Kathi Jones and for a search of the Jones residence were issued by a circuit judge upon the complaint of the chief deputy sheriff of White County. The arrest warrant charged defendant with unlawful delivery of cannabis. These warrants were based on the delivery of marijuana to Jim Watkins on March 24, 1977. On March 25, Illinois State Policeman Harry Kijonka and White County Sheriff's Deputies Lloyd Carter, Mary Vaupel, and Mark Hall went to the Jones residence to execute the warrants. Hall testified that he first encountered defendant in the backyard of the Jones residence. Jones had a large paper bag in his hand which appeared to contain marijuana. Defendant was asked to go inside the house where both he and his wife were arrested. Trooper Kijonka immediately read defendant and his wife the *Miranda* warnings from a departmental form. The defendant indicated that he understood his rights. Approximately 1½ hours later, or 7:15 p.m., after defendant had been taken to jail and processed, he indicated that he was willing to continue talking to trooper Kijonka. He further indicated that he would be willing to give a statement to the State's Attorney. The State's Attorney was then located and after he readvised defendant of his constitutional rights, defendant answered some questions. Kijonka testified that defendant admitted the sale of cannabis to Hite. Defendant also stated that he was free to sell cannabis for more than the agreed upon $50 per quarter pound and pocket the difference as well as to "pinch some off the top" of quantities sold.

Andrew Wist, an Illinois Bureau of Investigation criminalist, offered testimony as to the results of scientific tests which he performed on the substances which were seized from the Jones residence pursuant to the search warrant. He performed two procedures on the substances which when considered together will indicate whether the substance tested is cannabis, a microscopic examination and the Duquenois-Levine color test. The material in the bag that defendant was discovered holding was found to contain 748.6 grams of a substance containing cannabis. Material found in several other items seized at the residence, weighing a total of

117.5 grams, was also found to be marijuana or cannabis. No testimony was offered concerning the marijuana delivered to Watkins nor was it placed into evidence.

The first issue is whether procedural irregularities deprived the trial court of jurisdiction to proceed to judgment in this case. The defendant's arguments with respect to this "issue" are rambling, incoherent and incomprehensible. Nevertheless, we have independently reviewed the record on appeal. Since we cannot discern any defects in the manner by which defendant was brought to trial in this case, we find this argument to be wholly without merit.

Defendant's next contention is that he was not proved guilty beyond a reasonable doubt of calculated criminal cannabis conspiracy and unlawful delivery of more than 30 but not more than 500 grams of cannabis to Jim Watkins.

Under the facts of this case, these two offenses are closely tied to one another. Section 9(b) of the Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, par. 709(b)) provides that:

"* * * [A] person engages in a calculated criminal cannabis conspiracy when:

(1) he violates Section 4(d), 4(e), 5(d) or 5(e) of this Act; and

(2) such violation is part of a conspiracy undertaken or carried on with 2 or more other persons; and

(3) he obtains anything of value greater than $500 from, or organizes directs or finances such violation or conspiracy."

As can be seen, one element of the charge of cannabis conspiracy is the violation of section 4(d) or 5(d) of the Act (Ill. Rev. Stat. 1977, ch. 56½, pars. 704(d) or 705(d)). In the instant case, this element was alleged to be a violation of section 5(d) involving the delivery of between 30 and 500 grams of cannabis to Jim Watkins. Thus, the cannabis conspiracy charge could not have been proved beyond a reasonable doubt unless the delivery charge was also proved. We, therefore, shall address the arguments as to the delivery charge first.

■■ Defendant's first argument is that he was not proved guilty of this charge since no scientific evidence was presented to establish that the substance delivered to Watkins was cannabis. We disagree.

Although it is true that no expert testimony was presented by the IBI criminalist to establish that the particular substance delivered to Watkins was cannabis, it is well established that circumstantial evidence can be used to establish that a substance contains cannabis (*People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795; *People v. Robinson* (1958), 14 Ill. 2d 325, 153 N.E.2d 65), and that this can be by the admission of defendant if there is substantial, independent corroboration of the defendant's alleged

admission of the elements of the *corpus delicti* (*People v. Park*; *People v. Hubbard* (1967), 38 Ill. 2d 104, 230 N.E.2d 220). This case meets these requirements.

The testimony of trooper Kijonka established that defendant admitted that the substance he sold Watkins through Hite was marijuana. This admission in itself may be accorded great weight since there was substantial evidence that defendant had a means of knowing that the substance in question contained cannabis. (*People v. Park*.) The evidence revealed that defendant smoked some of the substance which was being sold on several occasions and that after smoking some of it during the first night on which it was prepared for sale, he agreed with Louis Vas' characterization of the marijuana as "fair stuff for being Mexican."

● 2 In addition, there are numerous other corroborating circumstances in this record which adequately establish by circumstantial evidence that the substance in question was cannabis. These circumstances are: (1) the expert testimony of Wist establishing that the substance seized from the defendant's home was cannabis; (2) the properly qualified opinion testimony of Louis Vas that the substance Jones was selling was marijuana (see *People v. Binkley* (1975), 25 Ill. App. 3d 27, 322 N.E.2d 514; *People v. Robinson*; *Ewing v. United States* (9th Cir. 1967), 386 F.2d 10); (3) the high price paid by Watkins for one-half pound of the substance, suggesting that the principals had taken steps to assure themselves of the identity of the substance as marijuana (*People v. Park*; *United States v. Lawson* (7th Cir. 1974), 507 F.2d 433, *cert. denied* (1975), 420 U.S. 1004, 43 L. Ed. 2d 762, 95 S. Ct. 1446); and (4) the large quantity of the substance sold, supporting a similar inference as to assurances of identity (*People v. Park*; *United States v. Bentvena* (2d Cir. 1963), 319 F.2d 916). Of primary importance to the first two of these corroborating circumstances is the fact that the substance sold to Watkins was part of a greater amount which was obtained from a single source. The evidence established that six one-pound bricks of marijuana were purchased on March 15, 1977. The substance here in question, as well as that which was seized from defendant's home upon his arrest, came from this shipment. In fact, Hite's testimony would indicate that the half pound which was delivered to Watkins through him came out of a bag the contents of which were later tested by the criminalist. Since there is no reason to believe that there were any appreciable differences between any separate portions taken from the greater amount of marijuana, we find that there was adequate circumstantial evidence presented to establish beyond a reasonable doubt that the substance delivered to Watkins was cannabis.

■■ Defendant makes two further contentions with respect to the proof that the substance delivered was cannabis. He contends first that it was error to allow Dennis Hite to testify over objection that he had been

convicted of delivery of cannabis on the basis of the transaction involving himself, defendant and Jim Watkins before the State established that the substance involved was cannabis. He also contends that it was error to allow Hite to testify that the substance he obtained for Watkins was marijuana since he had not smoked any of the substance delivered. Although the admission of the testimony concerning Hite's conviction may have been error at the time it was offered and there may have been an insufficient foundation laid for Hite's opinion testimony as to the identity of the substance, we find the admission of both items of evidence to be harmless beyond a reasonable doubt in view of the strong circumstantial proof of the identity of the substance.

Defendant makes an argument similar to that concerning the identity of the substance delivered to Watkins with respect to the amount of the substance transferred. He argues that in the absence of expert testimony as to the weight of the substance, there was insufficient proof that the amount delivered weighed more than 30 grams but not more than 500 grams. We cannot agree.

The evidence adequately established that the amount involved fell within this weight classification. The testimony of Vas demonstrated the great care which was taken to place one ounce of the material in each sandwich bag prepared for sale. Hite testified that he endeavored to obtain one-half pound or eight ounces of marijuana from defendant for Watkins. The defendant confirmed that the amount sought was one-half pound before he weighed up the eight sandwich bags of material which were transferred to Hite. It is axiomatic that a substance weighing eight ounces or one-half pound equals 226.792 grams. Since the substance delivered here purportedly weighed one-half pound, its weight fell well within the pertinent weight classification.

Defendant makes several other arguments relating solely to the cannabis conspiracy charge as part of his contention that there was insufficient evidence to prove him guilty of that charge. Although some of these arguments do not strictly apply to the sufficiency of the evidence, we will discuss them at this time.

After the jury was impaneled but before any witness was called, the defendant moved to dismiss the cannabis conspiracy charge on the basis that the information failed to cite the statutory provision which had allegedly been violated. The court denied this motion, allowed the State to amend the count by interlineation so that it included the statutory citation and commenced the trial over defendant's objection that he could not be tried on the amended count without it being reverified. Defendant now contends that it was reversible error to so try him since the failure to cite the statutory provision was a material defect. We cannot agree.

It has long been held that if an amendment to an information

involves no material change in the averments of the original, trial may be had on the original information as amended without a renewal of the formalities originally observed. (*People v. Clarke* (1950), 407 Ill. 353, 95 N.E.2d 425; *People v. Troutt* (1977), 51 Ill. App. 3d 656, 366 N.E.2d 370.) The amendment of the information in this case did not effect a material change in the averments nor can it be said to have prejudiced the defendant. The original count of the information named the offense, set forth all of the essential elements of calculated criminal cannabis conspiracy as provided in section 9(b) of the Act (Ill. Rev. Stat. 1977, ch. 56½, par. 709(b)), and so far particularized the offense as to apprise the defendant with reasonable certainty of the precise offense with which he was charged. (See *People v. Gold* (1967), 38 Ill. 2d 510, 232 N.E.2d 702.) Under these circumstances, we find the omission of the numerical citation of the statutory provision to be a formal defect which did not require a new verification of the count prior to the commencement of trial. See *People v. Torello* (1969), 109 Ill. App. 2d 433, 248 N.E.2d 725, *cert. denied* (1970), 397 U.S. 972, 25 L. Ed. 2d 266, 90 S. Ct. 1089.

Defendant contends next that a conspiracy involving two persons other than himself was not proved as required by statute since there was insufficient evidence to establish that his wife, Kathi Jones, was a co-conspirator. We disagree.

For the sake of clarity, we shall repeat at this point that in order to find defendant guilty of cannabis conspiracy it was necessary to prove that his violation of section 5(d) of the Act was part of a conspiracy involving two or more other persons. It is this requirement which defendant contends was not met because his wife was not proved to be a conspirator.

By definition a conspiracy is an agreement among conspirators. It necessarily implies acting in concert or undertaking some joint action. (*People v. Binkley.*) However, while a common design is the essence of a conspiracy, it is not necessary to prove such common design by direct evidence of an agreement between the conspirators, but rather it is only necessary to show that they pursued a course tending toward the accomplishment of the conspiracy's object. (*People v. Persinger* (1977), 49 Ill. App. 3d 116, 363 N.E.2d 897; *People v. Binkley; People v. Perry* (1961), 23 Ill. 2d 147, 177 N.E.2d 323.) As stated by this court in *Persinger:*

> "* * *[B]ecause of the clandestine nature of a conspiracy and the foreseeable difficulty of the prosecution's burden of establishing the conspiracy by direct proof, the courts have permitted broad inferences to be drawn of * * * [one's] conspiratorial intent and agreement from evidence of acts, conduct, and circumstances." 49 Ill. App. 3d 116, 121, 363 N.E.2d 897, 901.

■ After examining the record, we find that the jury could properly infer from the circumstances of this case and the acts and conduct of Kathi Jones that she was a participant in the plan to deliver five or six pounds of marijuana to the public. Of primary importance is the fact that she actively assisted in the preparation of marijuana for sale and agreed to the use of her residence as a warehouse for the marijuana and as a place for conducting illegal sales. The evidence further established that the money which purchased the marijuana was passed to her without need of any express reference as to its intended use, that she waited with Vas and defendant for the marijuana to arrive and that she was present during the delivery to Hite. In addition, Louis Vas expressly stated that she was involved in the conspiracy.

Defendant next argues that there was insufficient proof that he directed the conspiracy within the meaning of section 9(b)(3) of the Act (Ill. Rev. Stat. 1977, ch. 56½, par. 709(b)(3)). He believes this conclusion is dictated because Vas received most of the money from the sales and there is no evidence that defendant gave any orders to him or Kathi Jones.

■ We find this argument to be meritless. We would first note that subsection (b)(3) is satisfied if defendant directed either the violation of section 5(d) *or* the conspiracy. There can be no question but that defendant directed the delivery violation involving Hite and Watkins. He set the price, weighed the marijuana and made the transfer. In fact, he was the only conspirator involved in the transaction. Moreover, there is sufficient evidence to establish that defendant directed the conspiracy as well. Although no court has construed what is necessary to prove that one has organized or directed a conspiracy under this statute, the Illinois Appellate Court, Third District, in *People v. Lucas* (1975), 33 Ill. App. 3d 309, 337 N.E.2d 103, has answered this question with respect to the calculated criminal drug conspiracy statute (Ill. Rev. Stat. 1977, ch. 56½, par. 1405), which is substantially identical to the provision here in question. What the court there stated applies with equal vigor to the cannabis conspiracy provision:

> "The statute * * * must be read to be confined to those offenders who can be said to exercise a governing or determining influence over narcotics violations.
> * * *
> In order to prove that the defendant either organized or directed a conspiracy to deliver * * * there must be evidence which shows, in substance, that the defendant either had sufficient influence over his coconspirators to be in a position to systematize their activities or to give orders or instructions that would to some extent be binding." *Lucas*, 33 Ill. App. 3d 309, 314, 337 N.E.2d 103, 107.

■■ The evidence in the present case adequately shows that defendant exercised a determining influence over cannabis violations and that his actions and decisions were binding on the other conspirators. The defendant was completely responsible for making sales of the marijuana. He was at liberty to decide to whom to sell and at what price. It would be difficult to imagine a power which would have a greater determining influence on the violations or be any more binding upon the other conspirators.

The defendant's final argument with respect to the conspiracy charge is that it was error to give over his objection the State's conspiracy issues instruction which did not name the alleged co-conspirators instead of his tendered instruction which did.

Resolution of this question is hampered somewhat by the fact that there are no Illinois Pattern Jury Instructions on the offense of calculated criminal cannabis conspiracy. We, however, find that it was not error to give the State's instruction in view of the fact that such particularity is not required under IPI Criminal No. 6.04, the issues instruction for conspiracy under section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 8—2).

Defendant alleges further that it was error to refuse this instruction and five other tendered issues instructions, defendant's instructions Nos. 14 through 18, which would have informed the jury that the State must prove beyond a reasonable doubt that the cannabis delivered or possessed was nonexempt cannabis.

This contention is premised on defendant's belief that exemptions or exceptions under the Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, par. 701 *et seq.*), including the exceptions to the definition of "cannabis" relating to certain parts of the cannabis sativa plant (primarily mature stalks and sterilized seeds (Ill. Rev. Stat. 1977, ch. 56½, par. 703(a)), must be treated as affirmative defenses and that his cross-examination of criminalist Andrew Wist, revealing that he did not test to determine the maturity of stalks or the germination potential of seeds, was sufficient to raise the "affirmative defense" of exemption.

At issue here is the proper interpretation of section 16 of the Act (Ill. Rev. Stat. 1977, ch. 56½, par. 716) which provides in part:

"It is not necessary for the State to negate any exemption or exception in this Act * * * in any trial * * * under this Act. The burden of proof of any exemption or exception is upon the person claiming it."

In *People v. Biers* (1976), 41 Ill. App. 3d 576, 581-82, 353 N.E.2d 389, 393-94, the Illinois Appellate Court, Third District, held that if the language of this section were construed literally so as to place the ultimate burden of

proof as to the possible innocent nature of the cannabis upon the defendant, the section would violate the constitutional requirement that the State bear the ultimate burden of proving the defendant guilty beyond a reasonable doubt as to each element of the alleged crime. In order to avoid this perceived constitutional infirmity, the court construed the section as being equivalent to making the exemption an affirmative defense so that "once the applicability of the exemption is made a reasonable possibility by evidence, or otherwise at trial, either by the State or the defendant, the State must meet its usual burden of proof as to the issue together with other elements of the crime." 41 Ill. App. 3d 576, 582, 353 N.E.2d 389, 394.

■■■ We do not agree with the *Biers* court's interpretation of section 16 and consequently find that the trial court did not commit error in refusing the proffered instructions. It is evident that the legislature did not intend to treat these exceptions as affirmative defenses. As the Illinois Supreme Court noted in *People v. Smith* (1978), 71 Ill. 2d 95, 374 N.E.2d 472, in determining who had the burden of persuasion as to exemptions to the crime of unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(g)), whenever the legislature has intended a provision to constitute an affirmative defense to a crime it has labeled it as such. That the instant exceptions to the Act are distinct from affirmative defenses under our statutory scheme and never become an issue for the State to prove is shown by comparing section 16 with section 3—2 of the Criminal Code, the affirmative defense section (Ill. Rev. Stat. 1977, ch. 38, par. 3—2). Section 3—2 provides that once the issue involved in an affirmative defense is raised, the burden is on the State to prove that issue together with all other elements of the offense beyond a reasonable doubt. To the contrary, section 16 provides that the State need never negate any exemption or exception in any trial and places the burden of proof on the person claiming it. Furthermore, in view of the holding of our supreme court in *Smith* that placing the burden of proof upon the defendant as to exemptions to the unlawful use of weapons offense does not violate due process so long as the State is required to exact proof beyond a reasonable doubt of each element of the crime, we find that the allocation of the burden of proof contained in section 16 is constitutionally sound. The jury was not improperly instructed.

■■■ Defendant's next contention is that the court erred in denying his motion to dismiss count II of information No. 77-CF-17. The motion alleged that the charge of unlawful possession of cannabis with intent to deliver to a person less than 18 years of age in violation of section 5 and section 7 of the Act (Ill. Rev. Stat. 1977, ch. 56½, pars. 705 and 707) did not state an offense. Section 5 of the Act is a general prohibition against the

manufacture, delivery or possession with intent to deliver or manufacture cannabis which provides for graduated penalties depending on the amount of cannabis involved in a particular offense. Section 7 is a special enhanced penalty provision which provides in pertinent part that "[a]ny person who is at least 18 years of age *who violates section 5 of this Act by delivering cannabis* to a person under 18 years of age who is at least 3 years his junior may be sentenced to imprisonment for a term up to twice the maximum term otherwise authorized by section 5." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 56½, par. 707(a).) Defendant contends that the plain language of this provision limits its application to the offense of delivery. We agree. The language of the statute manifests a purpose to punish more severely only those older drug dealers who deliver cannabis to minors in order that there may be some deterrence to marijuana trafficking to unsophisticated and impressionable youngsters. We, however, feel that the proper disposition here is to reduce the offense to unlawful possession with intent to deliver more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1977, ch. 56½, par. 705(e)). The jury returned a guilty verdict as to this offense although the trial court did not impose a sentence thereon. In addition, when all references to section 7 and allegations related to it are deleted from the instant count, it properly charges the offense of possession with intent to deliver as proscribed by section 5(e). Since the trial judge believed he was imposing a sentence under the enhancement provision in setting a term of imprisonment of one to five years on the possession with intent to deliver offense, we must vacate the sentence and remand for resentencing upon the guilty verdict returned on the "lesser" offense described in section 5(e) of the Act. Ill. Rev. Stat. 1977, ch. 56½, par. 705(e).

Citing *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, the defendant contends that he cannot stand convicted of both possession of cannabis and possession with intent to deliver cannabis and both delivery of cannabis and calculated criminal cannabis conspiracy. We agree.

■■ The rule of *King* is that multiple convictions with concurrent sentences are barred when more than one offense is carved from the same physical act or when some of the offenses arising from multiple acts are lesser included offenses by definition. (66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45.) This prohibition is applicable to both sets of charges involved in this case. The State has conceded error with respect to the possession charges, and we accept that concession. Both possession charges are based on the same physical act, and possession of cannabis is a lesser in-cluded offense of possession with intent to deliver cannabis. Consequent-ly, since the evidence is sufficient to support the conviction for posses-sion with intent to deliver over 500 grams of cannabis (Ill. Rev. Stat. 1977, ch. 56½, par. 705(e)), we must vacate the conviction and sentence

for possession of more than 500 grams of cannabis (Ill. Rev. Stat. 1977, ch. 56½, par. 704(e)).

██ The State, however, does not concede error as to the delivery and conspiracy charges but rather argues that the *King* decision does not apply to these offenses. While we agree with the State that these offenses were not carved from the same physical act, we cannot agree that the instant delivery charge is not a lesser included offense of this particular conspiracy charge. In Illinois, an included offense is defined as one which "[i]s established by proof of the same or less than all of the facts ° ° ° than that which is required to establish the commission of the offense charged ° ° °." (Ill. Rev. Stat. 1977, ch. 38, par. 2—9(a); *People v. Lyons* (1975), 26 Ill. App. 3d 193, 324 N.E.2d 677.) Stated another way, for an offense to be a lesser offense and included within another, the greater offense must include every element of the lesser offense plus one or more other elements. (*People v. Thompson* (1977), 55 Ill. App. 3d 795, 371 N.E.2d 326.) The instant cannabis conspiracy offense required proof of three elements, the delivery of more than 30 grams but not more than 500 grams of cannabis to Jim Watkins, and two others. Since the delivery to Watkins was an offense established by proof of less than all of the facts required to establish the cannabis conspiracy offense, and the conspiracy offense included every element of the delivery offense plus two other elements, the delivery was an included offense and it was error to enter judgment on both verdicts. We therefore vacate the conviction and sentence for delivery of more than 30 but not more than 500 grams of cannabis to Jim Watkins.

Since we have vacated the delivery conviction, we need not consider whether the elements necessary for application of the enhanced penalty provision (Ill. Rev. Stat. 1977, ch. 56½, par. 707(a)) were sufficiently proved with respect to this charge.

██ █ The final issue on appeal is whether the court abused its discretion in denying defendant probation. We find that it did not. The role of a reviewing court with respect to the denial of a sentence of probation is a narrow one. It may only determine whether the trial court failed to exercise discretion or acted in an arbitrary manner in denying probation. (*People v. Rege* (1976), 64 Ill. 2d 473, 356 N.E.2d 537; *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168.) The remedy in either event is to remand for a new sentencing hearing. In the instant case, it cannot be said that the court arbitrarily denied probation to defendant on the cannabis conspiracy offense since, by statute, it was prohibited from sentencing any defendant convicted of it to a sentence of probation. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—3(d)(1).) Nor can it be said that the court acted in an arbitrary manner in denying probation on the possession with intent to deliver offense by finding pursuant to section 5—6—1(a)(3)

of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—1(a)(3)) that in view of the amount of cannabis involved, a sentence of probation would deprecate the seriousness of the defendant's offense.

For the foregoing reasons, we affirm the judgment of the circuit court of White County with respect to the calculated criminal cannabis conspiracy offense; we reverse the judgment of the court with respect to the delivery of more than 30 grams but not more than 500 grams of cannabis and possession of more than 500 grams of cannabis offenses, and we affirm as modified the judgment of the court with respect to the possession with intent to deliver more than 500 grams of cannabis offense and remand this cause for resentencing on that offense alone.

Affirmed in part, reversed in part and remanded.

KASSERMAN, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN, dissenting:

In my opinion there was insufficient proof offered by the State to prove beyond a reasonable doubt that the substance delivered to Watkins was, in fact, cannabis, and there was also insufficient proof that defendant was guilty of a calculated criminal cannabis conspiracy.

The majority holds that there was adequate circumstantial evidence introduced by the State to prove beyond a reasonable doubt that the substance delivered to Watkins was, in fact, cannabis.

> "The basic distinction between direct and circumstantial evidence is that in the former instance the witnesses testify directly of their own knowledge as to the main facts to be proved, while in the latter case proof is given of facts and circumstances from which the jury may infer other connected facts which reasonably follow, according to the common experience of mankind. * * *.
>
> The competency of circumstantial evidence is not open to question, provided it is the best evidence which the nature of the case admits. When it is disclosed that direct evidence of a material fact is probably in existence, circumstantial evidence of that fact cannot be resorted to without accounting for the absence of the direct evidence." (29 Am. Jur. 2d *Evidence* §264 (1967).)

In this case the State possessed direct evidence as to whether the substance delivered to Watkins was or was not cannabis and deliberately did not introduce it. Therefore, proof by circumstantial evidence of this fact was insufficient.

At the close of the State's case, the defense attorney argued to the

trial judge that the People had failed to establish the *corpus delicti* of the crime because there was no submission to the jury of any substance purporting to be marijuana that was alleged to have been received by Watkins. In other words, the purported cannabis obtained by Hite from Jones and delivered to Watkins was never admitted into evidence. The trial judge asked the prosecution if there was any actual test of the substance and the State's Attorney responded that there were tests, but the tests had not been "admitted" and that the State's case rested on the opinion of Hite and the confirmation by Jones, the defendant. I emphasize that the State did not argue as the majority now holds that the substance was admissible because it came from the same batch.

Since there was direct evidence in the possession of the State concerning the identity of the substance, and since the State deliberately withheld that evidence, there arises the presumption that the test would have been unfavorable to the State. Gard, Illinois Evidence Manual Rule 22 (1963) and 29 Am. Jur. 2d *Evidence* §178 *et seq.* (1967), where it is said:

"It is a well-established rule that where relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would have been unfavorable to him."

For the foregoing reasons, I would hold that the State failed to prove beyond a reasonable doubt that the substance delivered to Watkins was cannabis.

I would also hold that there was insufficient evidence produced by the State to prove defendant guilty of a calculated criminal cannabis conspiracy as charged in the information which reads:

"Thomas H. Sutton, State's Attorney in and for said County, in his own proper person, comes now again here into Court, and in the name and by the authority of the People of the State of Illinois, gives the Court to be informed and understand that BRAD JONES, heretofore, to-wit: on or about the 15th day of March A.D. 1977, and continuing until the 25th day of March, 1977, in the County of White and State of Illinois aforesaid did commit the offense of Unlawful Calculated Criminal Cannabis Conspiracy, in violation of Illinois Revised Statutes, Chapter 56½, Section 709(b) in that the said defendant, as part of a conspiracy undertaken with two other persons, Kathi Jones and Louis Vas, in violation of Illinois Revised Statutes, Chapter 56½ of Section 705(d), knowingly and unlawfully delivered to Jim Watkins, more than 30 grams, but not more than 500 grams of a substance containing Cannabis,

otherwise than as authorized in the Cannabis Control Act, and he directs said violation."

The plain language of this information mandates the State to prove that Brad Jones delivered more than 30 grams but not more than 500 grams of substance containing cannabis to Jim Watkins and that he did so as part of a conspiracy undertaken with Kathi Jones and Louis Vas.

"In a prosecution for conspiracy the proof should be restricted to the issues properly made in the case. The proof must correspond with, and support, the material averments of the indictment, and must establish that the defendant is guilty of the particular charge made therein. It is not sufficient to sustain a conviction to prove that the defendant is guilty of some other charge or that the defendant is guilty of generally bad or criminal conduct." 11 Ill. L. & Prac. *Conspiracy* §88 (1955).

In *Lowell v. People* (1907), 229 Ill. 227, the court said:

"This indictment charges the defendants with conspiring to cheat and defraud Jackson, who was unknown to the defendants, or either of them, so far as the proof shows, before he took a policy in one of their companies. * * * It cannot be said that the allegations of a conspiracy with the intent to cheat and defraud Jackson are sustained by proof of an intent to cheat and defraud the public generally. * * * In criminal cases it is not sufficient, to sustain a conviction on a particular charge, to prove that the defendant was guilty of some other charge or of general bad and criminal conduct, but the proof must establish his guilt of the particular charge set forth in the indictment." 229 Ill. 227, 237.

In *People v. Mader* (1924), 313 Ill. 277, the court said:

"To constitute the crime of conspiracy there must be more than one person guilty thereof, and before a defendant can be convicted of conspiracy the evidence must show that there are two or more persons guilty of such conspiracy. [Citation.] It is not sufficient to sustain a conviction on a particular charge to prove that the defendant is guilty of some other charge or of generally bad and criminal conduct, but the proof must establish his guilt of the particular charge in the indictment. Lowell v. People, 229 Ill. 227." 313 Ill. 277, 285.

In *People v. McChristian* (1974), 18 Ill. App. 3d 87, the court said:

"To sustain a conviction for conspiracy, the object of the conspiracy has to be proved as laid out in the indictment. [Citation.] In this case, since the object of the conspiracy, according to the charge, was the murder of five named persons, the State had to prove that when defendant and Bailey fired guns in the direction of the automobile in which the five were riding, they did

so with knowledge that the purported victims were in there. [Citations.]

* * *

* * *. A conspiracy against a number of individuals must be proved by evidence which shows that the conspiracy was against all as charged; a conspiracy against a single person cannot be sustained by proof of a conspiracy against the public generally." 18 Ill. App. 3d 87, 90-91.

In this case there was no proof at trial that defendant, Kathi Jones, or Louis Vas knew Jim Watkins personally or even knew of his existence prior to the alleged delivery on March 24, 1977. Nor was there a scintilla of evidence that defendant conspired with Louis Vas and Kathi Jones to deliver cannabis to Jim Watkins on March 24, 1977.

There was also no proof that the defendant exercised a governing or determining influence on the transaction alleged. It is undisputed that the plan to have Jim Watkins obtain cannabis from the defendant was planned by the office of the Sheriff of White County, rather than by the alleged co-conspirators. Therefore, the defendant did not exercise a governing or determining influence on the transaction alleged as required by section 9(b) of the Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, par. 709(b)).